ORVILLE F. HIGGINS, RESPONDENT, v. TERMINAL RAILROAD ASSOCIATION
OF ST. LOUIS, A CORPORATION, APPELLANT.—97 S. W. (2d) 892.

St. Louis Court of Appeals.   Opinion filed November 10, 1936.

Motion for Rehearing Overruled November 24, 1936.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for appellant.

*J. Edward Gragg* and *Robert L. Aronson* for respondent.

HOSTETTER, P. J.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff while at the Union Station in St. Louis. The suit was instituted in the Circuit Court of the City of St. Louis on August 24, 1934.

Plaintiff's version of the facts were substantially as follows:

That plaintiff was a salesman for the Ohio Salt Company and worked in the city of St. Louis; that a Mr. Grierson, living in Columbus, Ohio, a representative of the Salt Company, was in St. Louis on June 1, 1934; that Mr. Grierson, desiring to take a Pennsylvania train home, was accompanied by plaintiff to the Union Station and reached there shortly before six o'clock P. M. of that day; that Grierson employed a red cap to carry his baggage for him; that the railroad tracks under the train shed run north and south and between the various tracks there is a concrete platform which plaintiff judged to be about seventeen feet wide; that the coach which Grierson desired to take was near the front, or south end of the train shed; that Grierson and plaintiff went through the gate and came to the steps of the coach of the Pennsylvania train;

that this was just a few minutes before the time for the departure of the Pennsylvania train; that this train, as then located, was to the east of this platform and on the track immediately west of the platform was another passenger train, said to be the Missouri Pacific train; that opposite the steps of the coach which Grierson desired to board was an empty truck alongside of the Missouri Pacific train, against which truck plaintiff leaned, talking to Grierson, who was to his left and north of plaintiff practically a few inches from the north end of the empty truck; that they were there talking when suddenly a voice hollered "Watch out," when plaintiff then observed a truck twenty-five or thirty feet to the north coming south; that Grierson jumped around the north end of the stationary truck and plaintiff backed up against the truck as far as he could; that while thus standing and with his right foot extending a few inches ahead of his left foot the wheel of the truck ran over his right foot, injuring his big toe and the two next to it and breaking the bones in the three toes; that the truck did not swerve one way or the other; that it went by in a general straight line; that the empty truck standing next to and alongside the Missouri Pacific train was three or four inches away from that train; that the bed of the truck was approximately three and one-half or four feet wide and that ten or twelve feet intervened between this empty truck and the Pennsylvania train standing on the east side of the platform and that the way was clear; that when plaintiff heard the voice halloo "Watch out," he looked to the north and saw a man in a sort of a "dog trot" coming up fast with this truck; that it was heavily loaded with baggage, grips, suitcases, etc., and looked to be fifteen or twenty feet long; that the accident happened exactly three minutes after six.

On cross-examination the plaintiff stated that he did not intend to become a passenger on the train, but was merely there accompanying Grierson to see him off and not necessarily to discuss business, but for pleasure or convenience; that after he heard him halloo he saw that the man with the truck was twenty-five or thirty feet to the north of him and saw the truck coming, but he did not have time to go to the south end of the stationary truck because the man was coming with the truck so fast, that is, in a "dog trot;" that he (plaintiff) was a young man; that the truck the man was pulling had two small wheels on each end and big wheels in the middle of the truck; that the truck scraped him along the leg a little, but did not hurt him thereby, although he got some grease on his pants; that it was about three weeks before he could put his foot on the ground at all and had to walk with a cane for three more weeks; that he was able to walk normally in about two months; that his foot hurt him after a day of walking and appeared tired and sore

and had a dull ache in it when weather changed; that he was away from work about six weeks and that was all the time he lost; that he lost no salary and did not pay any money for medical or hospital attention; that the big toe and the two next to it were fractured; that they were the only injuries received; that there was still tenderness present on pressure or palpitation; that as a salesman he was compelled to do much walking; that the truck pushed by the man who hollered "Watch out," was the same truck which ran over his foot and it did not swerve in either direction, but ran in a general straight line from the time he first saw it; that he did not have time to go to the south end of the stationary truck after his attention was directed to the truck coming towards him; that he had no idea that the man was going to run the truck over his foot so he backed up against the stationary truck as far as he could; that his right foot extended about two or three inches beyond his left foot; that he did not have time to jump up on the stationary truck.

The version of this incident given by the truckman was substantially as follows:

That at the time in question he was a mail handler and hauled a load of mail from the Missouri Pacific train on track eight to the Pennsylvania train on track nine going south; that he noticed a couple of men standing there and hollered to them to look out for themselves; that when he asked the gentlemen to get out of the way they said "Go ahead;" that he went ahead and that was all he knew about it; that he was going at a moderate gait and that it was a cinch he could not be running pulling a loaded truck; that he was about a car length away from them when he first saw them, which was about seventy feet; that he didn't feel that he had run over anybody; that if he did run over anyone he didn't know it then.

On cross-examination the truckman said he just told the two gentlemen to get out of the way that he had a "hot shot;" that he meant by hot shot that he was in a hurry to get the mail into the Pennsylvania train before its leaving time and that he was pulling the truck, not pushing it; that when he first saw the two men standing there, he was a car's length away—about seventy feet; that he was about ten or twelve feet away from them when he hallooed "Look out, boys, I got a hot shot," and then they said, "Go ahead;" that he didn't swerve the truck one way or the other, but went straight and took his time; that the width of a truck was about three and one-half feet and the width of the platform was about ten or twelve feet.

Mr. Grierson did not testify.

Evidence produced by defendant tended to show that plaintiff and Grierson were intoxicated, feeling good; that they were warned several times by the Pennsylvania brakeman regarding cars or

trucks moving backwards and forwards on the platform. The charge of intoxication was denied by witnesses called by plaintiff in rebuttal.

All charges of negligence contained in the petition were abandoned except the charge of negligence under the humanitarian rule, which was to the effect, as set forth in plaintiff's Instruction No. 1, that if the jury found that defendant's employee saw, or, by ordinary care could have seen, the plaintiff in the position of imminent peril of being struck by defendant's baggage truck in time thereafter by the exercise of ordinary care to have swerved the truck and thereby could have prevented striking plaintiff, but that he failed to do so and that the truckman was thereby negligent, and as a direct result of such negligence the plaintiff was struck and injured, then plaintiff would be entitled to a verdict.

The jury returned a verdict in favor of the plaintiff for $1500 upon which a judgment was entered and defendant in due course brings the cause to this court by appeal for review.

Defendant's first assignment of error is that its instruction in the nature of a demurrer to the evidence should have been given. The argument in support of this assignment is advanced that even though defendant's truckman was negligent (but denying that he was) plaintiff's own negligence in failing to get out of a dangerous situation after the warning was the proximate cause of his injuries.

Inasmuch as the case went to the jury solely upon the charge of negligence on the part of defendant under the humanitarian rule, the doctrine of contributory negligence on the part of plaintiff has no place under such circumstances.

Under the well known rule that in the determination of the question as to whether plaintiff has made out a submissible case for the jury, plaintiff's evidence must be taken as true and defendant's evidence, where it supports plaintiff's theory of the case, must be taken as true, and wherein it contradicts plaintiff's theory it must be set aside, and that plaintiff must be accorded all reasonable inferences which may be deducible from all the testimony favorable to him, we are of the opinion that the case was clearly one for the consideration of the jury. The natural instinct of self preservation alone would be sufficient to justify the conclusion that plaintiff would try to seek a safe place from the oncoming truck. He was not in a dangerous position when talking with his friend whom he had accompanied to the station to see him off on the train. There was a clear space, of nine or ten feet, between where he and his friend were standing beside the empty truck on the west side of the platform to the Pennsylvania train on the east side, more than sufficient for passengers, trucks, red caps, etc., to use. He had a right to be where he was, and was justified in the assumption that he was in no danger. Defendant's truckman, pushing or pulling

(it matters not which), a heavily loaded truck, suddenly appeared in a dog trot, and advanced to within twenty-five or thirty feet, and signaled to them to "Watch out," or get out of the way that he had a hot shot, etc., and the friend, being near the north end of the empty truck got out of danger by jumping around in front of it, while plaintiff, in the sudden emergency, pushed back closely against it, making the best of the situation, no doubt thinking he was then in as safe position as it was possible to get into under the circumstances. He testified that he didn't have time to run south and get in front of the south end of the empty truck or time to jump on top of the empty truck. It was a question for the jury to determine as to whether he had time to do one or the other of these two ways to escape danger.

But, assuming that he would have had time to have jumped on the empty truck or run around south of it, the jury would doubtless take into consideration the fact that humans when confronted with a sudden danger often become frightened and confused and being compelled to act suddenly the judgment is impaired and by reason thereof often adopt the course which is the wrong one and which brings injury instead of safety. Besides that, he had a right to expect that the truckman would swerve his truck ever so little to the east into the wide, unused space and take no chance of hitting and brushing plaintiff's pant leg and running over his foot. It would have been a natural, humane, decent, proper and commendable act on the part of the truckman to have done so. Every human being has a right to believe that a fellow human being has at least a modicum of "the milk of human kindness." It is indeed a hardhearted driver of an automobile who will fail to swerve his car when by doing so he will avoid crippling or killing even a dog, a chicken or a cat. Courts recognize and often apply the doctrine of emergency as bearing on the charge of contributory negligence.

In Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 24 S. W. (2d) 143, loc. cit. 152, our Supreme Court quoted approvingly the following from 45 C. J., 962, viz.:

"Conduct which might otherwise constitute negligence may not be so considered where the acts or omissions of the person injured occurred in the presence, or under a reasonably wellfounded apprehension, of impending danger, or in an emergency such as is calculated to produce fright, excitement or bewilderment, and affect the judgment. The rule is well established that, when one is required to act suddenly and in the face of imminent danger, he is not required to act as if he had time for deliberation and the full exercise of his judgment and reasoning faculties. It has been asserted that this is especially true where the peril has been caused by the fault of another."

In Mayne v. May Stern Furniture Co. (Mo. App.), 21 S. W. (2d) 211, loc. cit. 213, this court said:

"The law of negligence has always recognized that where one is confronted with a sudden emergency, without sufficient time to determine with certainty the best course to pursue, he will not be held to the same accuracy of judgment as would be required of him if he had time for deliberation and that, consequently, if he exercises due care under the existing circumstances, he will not be held concluded by the ill success of his undertaking, even though another course of conduct might have avoided the injury. In other words, the fact that any emergency arises will not relieve one of the obligation to exercise such care as the exigencies of the particular occasion warrant, but it is one of the circumstances to be considered in determining the ultimate question of whether due care was actually exercised. [Kleiber v. People's Railway Company, 107 Mo. 240, 17 S. W. 946, 14 L. R. A. 613; Dickson v. Omaha & St. L. R. Co., 124 Mo. 140, 27 S. W. 476, 25 L. R. A. 320, 46 Am. St. Rep. 429; Stack v. General Baking Co., 283 Mo. 396, 223 S. W. 89; Holt v. Hamilton-Brown Shoe Co., 186 Mo. App. 83, 171 S. W. 673; 45 C. J. 710.]"

In Carter v. Wells (Mo. App.), 40 S. W. (2d) 725, loc. cit. 726, this court also said:

"It is no longer open to question but that, under the law of negligence, if one, by the negligence of another, is placed in a situation of apparent imminent peril, he is not required, in attempting to escape therefrom, to use the judgment and discretion that is required of him when not dominated by terror of impending danger; and if, without having time to deliberate, and acting upon the instinct of self-preservation, and as a prudent person might be expected to act in the circumstances, he is injured by adopting a dangerous alternative, he may still recover from the one by whose negligence he has been impelled to act. This is true though no injury would have resulted had no attempt to escape been made. Under the authorities, the principles covering liability in such cases are: First, that the peril or alarm must be caused by negligence of the defendant; second, the apprehension of peril from the standpoint of the injured person must have been reasonable; third, the appearance of danger must have been so imminent as to leave no time for deliberation. [Bricker v. City of Troy, 315 Mo. 353, 287 S. W. 341; Delfosse v. United Rys. Co. (Mo. Sup.), 201 S. W. 860; Kleiber v. People's Ry. Co., 107 Mo. 240, 17 S. W. 946, 14 L. R. A. 613; Stanley v. Helm, 204 Mo. App. 159, 223 S. W. 125; Coy v. Dean, 222 Mo. App. 67, 4 S. W. (2d) 835.]"

In Menard v. Goltra, 328 Mo. 368, 40 S. W. (2d) 1053, loc. cit. 1060, our Supreme Court, in commenting on the action of a person suddenly confronted with danger, said:

"The rule is universal that where an emergency of that kind exists, in the excitement, where sudden action is required, a party in such situation is not negligent in failing to take a more safe course. Acting upon the spur of the moment, he has not time to deliberate upon such movement."

So that, even assuming that defendant's contention is correct, in that it could be absolved from liability by reason of plaintiff's alleged contributory negligence in seeking a way of escape from danger of being struck by the oncoming truck, after warning was given, still we think it was a question for the jury to determine under all the circumstances, whether the way he adopted to escape, when there might have been other and surer ways, did, or did not, constitute negligence on his part. Hindsights are always better than foresights, anyway.

We therefore rule that the plaintiff's case as made out was one properly submissible to the jury.

Defendant assails the correctness of plaintiff's Instruction No. 1, which reads as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion in question plaintiff was standing on a platform in the Union Station in the City of St. Louis, Missouri, and if you further find that a hand-propelled truck, owned by defendant, and operated by its agent and servant, the baggage handler then and there in charge of said truck, was being pushed and propelled in a southwardly direction on said platform upon which plaintiff was standing, and if you further find that plaintiff was struck and run into and collided with by said baggage truck then and there operated by defendant, its agent and servant, and that plaintiff was injured as a direct result thereof, if you so find, and if you further find that prior to the time that plaintiff was struck and run into by said baggage truck plaintiff became and was in a position of imminent peril of being struck by said truck or baggage truck owned and driven by defendant, its agent and servant, and that defendant's said agent and servant saw, or by the exercise of ordinary care could have seen the plaintiff in such position of imminent peril, if any, in time thereafter for defendant, its agent and servant, by the exercise of ordinary care in the operation of said truck and baggage truck, to have swerved the same, and thus and thereby have prevented the truck or baggage truck from striking plaintiff, and that defendant, its agent and servant, failed to do so, and in so failing, if you so find, was negligent, and that plaintiff was struck and injured as a direct result of such negligence, if any, then the Court instructs you that your verdict must be in favor of plaintiff and against defendant."

Defendant urges that the criticised instruction is predicated on

the fact that its truckman saw, or by the exercise of ordinary care could have seen plaintiff in a position of imminent peril in time by the exercise of ordinary care to have swerved the truck and have prevented the injuries.

The argument advanced in support of this assignment of error somewhat grudgingly admits that the evdience might be sufficient to prove that the truckman *saw* plaintiff, but it is entirely insufficient to show that he saw that plaintiff was in a position of peril.

We think a fair interpretation of plaintiff's testimony would inevitably lead to the conclusion that defendant's truckman when he saw plaintiff and his friend about twenty-five or thirty feet away, conversing alongside the empty truck (that being the time he signaled them to "Watch out"), became cognizant of their being in the pathway of his loaded truck and that they would be in danger of being struck by it if they remained where they were; and when he saw them act on his warning, the friend jump to the north end of the empty truck and the plaintiff back up against the truck, his mental reflexes might possibly and reasonably have been something as follows: That plaintiff's friend had clearly reached a place of safety; that plaintiff, if not in a place of safety, evidently thought that he had reached a place of safety. This latter conclusion could readily be reached by the truckman because it is apparent that plaintiff, notwithstanding the "dog trot" approach of the loaded truck, could have jumped on the empty truck or have run around the south end of it, before the wheel of the oncoming truck could have reached him, and been in a place of absolute safety in either event, notwithstanding his testimony that he didn't have time to do either. Or, the truckman might have become aware of plaintiff's peril before the wheel ran over his foot and averted the injury by swerving the truck.

However, what we have said in discussing defendant's assignment of error in respect to the overruling of its instruction in the nature of a demurrer to the evidence is applicable to its criticism of plaintiff's Instruction No. 1, and all these questions were for the jury to consider, and we rule that the instructions was properly given by the trial court.

Defendant's next assignment of error is that plaintiff's Instruction No. 2 is erroneous in that it permits recovery for permanent injuries when there is no evidence of permanent injuries. The testimony of Dr. Victor J. Meinhart, we think, furnishes evidence of permanent injuries. He testified that the X-ray pictures show that the fracture of the distal phalanx of the first toe on the right foot was of the comminuted type; that the picture showed the displaced fragments of the fractured bone; that the fragments are out of line, displaced and uneven, and the fracture was a sort of shattering of

the bone. When the doctor was asked the direct question as to whether the fracture of the big toe was an injury of a permanent nature, he unequivocally stated that the fracture of the bone was permanent, and that it produced an abnormality and that there was some displacement of the fragments. Thus there was evidence of permanent injury. Plaintiff testified that he continued to suffer pain on account of walking.

However, as the verdict for $1500 is not claimed to be excessive in this court, defendant is in no position to complain of the inclusion of damages for permanent injuries if the jury found there was such. The only effect of the inclusion of the question of permanent injuries in the instruction would be to augment the amount of recovery and, as defendant does not complain of the excessiveness of the verdict, it would seem to follow that defendant is not prejudiced by the inclusion of that question, and that, even if error, it should be regarded as harmless error.

Defendant's last assignment of error is that the trial court erred in refusing its Instruction No. 8, which reads as follows:

"The court instructs the jury that the only theory upon which plaintiff claims the right to recover a verdict in this case is that the person in charge of and operating the truck saw, or by the exercise of ordinary care could have seen, the plaintiff then and there standing on the Union Station platform in a position of imminent peril of being struck by the truck in time thereafter for said person to have swerved said truck and thus and thereby have avoided striking and colliding with plaintiff, but negligently and carelessly failed to do so.

"The court further instructs the jury that the person in charge of said truck had the right to assume and believe, if he saw plaintiff standing there, unless there was something in his actions or manner to indicate to the contrary, that plaintiff would step out of the way of said truck, if he could have done so by the exercise of ordinary care, and the person in charge of said truck had the right to assume and believe, if plaintiff stepped back against the truck standing there, if it was standing there, that plaintiff was in a position of safety, unless said person saw or by the exercise of ordinary care could have seen to the contrary. And the person in charge of said truck was not obliged to swerve said truck, if he could have done so by the exercise of ordinary care, until such person saw or by the exercise of ordinary care could have seen that plaintiff was in a position of imminent peril and in danger of being struck by said truck. And you are further instructed that if, when plaintiff backed against the truck standing there, if he did so, the person operating said truck did not see nor by the exercise of ordinary care could have seen that plaintiff was in a position of

imminent peril and in danger of being struck by said truck, until it was too late by the exercise of ordinary care to swerve said truck so. as to prevent it from running over plaintiff's foot, then plaintiff cannot recover and your verdict must be for defendant.''

We think that defendant was entitled to have its instruction No. 8 given by the court. In order for plaintiff to recover it is not sufficient for him to prove that the truckman saw plaintiff, after the warning, back up against the empty truck, but the jury must further find that he was in imminent peril and that the truckman either saw him in such perilous position or by the exercise of ordinary care could have seen plaintiff in such perilous position in time to have swerved his truck and avoided contacting plaintiff. As we have set out hereinbefore, the truckman might have drawn different conclusions from the conduct of plaintiff in backing up against the stationary truck. The principles embodied in the refused instruction are approved by the Supreme Court in Clark v. Atchison, T. & S. F. R. Co., 319 Mo. 865, 6 S. W. (2d) 954, loc. cit. 960. [See, also, Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482.]

It follows that for the refusal of defendant's Instruction No. 8 the judgment of the trial court should be reversed and the cause remanded, and, it is so ordered. *Becker* and *McCullen, JJ.,* concur.