WILLARD GURWELL v. JEFFERSON CITY LINES, INC.—192 S. W. (2d) 683.

Kansas City Court of Appeals.   February 11, 1946.

*Bushman & Buchanan* and *H. P. Lauf* for appellant.

*Lewis H. Cook* and *Roy W. Rucker* for respondent.

SPERRY, C.—Willard Gurwell, plaintiff, sued Jefferson City Lines, Inc., for damages suffered because of personal injuries received when a pick-up truck, in which plaintiff was seated, was struck, by defendant's bus. Plaintiff pleaded primary and humanitarian negligence. At the close of his evidence he dismissed as to primary negligence and the cause was submitted to the jury on humanitarian negligence alone. Frof a judgment in favor of plaintiff, in the amount of $5000, defendant has appealed.

Defendant challenges the sufficiency of the evidence to make a submissible case. The pertinent facts in evidence which tend to support plaintiff's right to recover are hereinafter set out rather fully.

At the time the accident occurred plaintiff was engaged in distributing newspapers to customers of his employer in Jefferson City. The papers were being transported in a pick-up truck driven by plaintiff. Two boys, James Clardy, who was plaintiff's helper, and Vincent Boehm, who was merely riding, were in the cab with plaintiff when the accident occurred. Plaintiff and Clardy were thrown from the truck and rendered unconscious, and Boehm was killed.

Moreau Drive is a north-south street, forty feet in width, from curb to curb, at the point where it is intersected by Vineyard Square, an east-west street twenty-seven feet wide at this point. Vineyard Square extends westward, but not eastward, from Moreau Drive. The collision occurred in Moreau Drive, just north of the intersection.

Clardy testified that, at about 6:00 A. M. Jan. 9, 1944, plaintiff was driving the truck southward on Moreau Drive and was approaching Vineyard Square, where he intended, as was customary, to make a U-turn; that the moon was shining and visibility was good; that the speed of the truck was about twenty-five or thirty miles per hour until it reached a point some sixty feet north of Vineyard Square when the speed was slackened, before the U-turn was commenced, to about ten miles per hour; that the truck was turned eastward until the right wheel was about six inches from the east curb and the left wheel about twelve inches therefrom, when the truck was brought to a complete stop; that plaintiff shifted gears and put the truck in reverse but had not again put it in motion when the collision occurred and he lost consciousness; that he did not see the bus and heard no warning of its approach; that when the collision occurred the truck was stationary; and that when he regained consciousness the bus was about fifty feet south of where he was and the truck was further south than it was when the collision occurred.

Mr. Bales, plaintiff's employer and the owner of the truck, testified that he arrived at the scene shortly after the collision occurred and before 6 o'clock. He identified a photograph of the truck which, he

stated, disclosed its condition after the collision occurred. There was a dent in the left front fender; the left rear of the truck, the fender, was smashed; and the left rear wheel was broken off at the axle. He stated that there were skid marks on the pavement, made by rubber tires of the truck, about six feet in length, located entirely east of the center line of Moreau Drive; that at the end of these marks there was a mark made by metal (from the broken axle) extending from north to south in an arc leading to the truck; that the bulge of the arc was to the west; that the truck is sixeen feet long from bumper to bumper; and that the body extends about three and one-half feet beyond the rear axle. He also gave evidence to the effect that defendant's bus, when traveling at a speed of twenty-five miles per hour, could have been stopped within a distance of thirty feet.

Plaintiff testified to the effect that as he traveled south on Moreau Drive he was proceeding at a speed of twenty-five miles per hour; that when he reached a point about 50 feet north of Vineyard Square he reduced the speed, changed to second gear and, as he approached Vineyard Square, began and continued a U-turn at a speed of six miles per hour; that he turned the truck to the east, stopped at the curb, and put the gears in reverse; that before beginning the turn he looked in the rear view mirror of the truck for traffic from the north; that he could see northward on Moreau Drive a distance of 125 feet; that no vehicle was then within view from that direction; and that he did not see or hear the bus and had no knowledge of its presence or approach. He stated that the collision occurred while the truck was standing still and that he was thereby instantly rendered unconscious. On cross-examination he testified to the effect that, after looking in the rear view mirror, before starting the turn, ''I looked forward and then I looked back'' and saw nothing; that when he brought the truck to a stop the right front wheel was about six inches from the east curb, that the left was about eight inches; that the truck extended westerly across Moreau Drive but was entirely east of the center line thereof; and that the truck remained stationary long enough for him to put it in reverse before the collision occurred but not long enough for him to again put it in motion.

Defendant produced the deposition of Mr. Dunavant who was, at the time of the accident, a member of the Jefferson City police. His testimony was to the effect that he arrived at the scene shortly after the collision occurred, before anything had been moved. the bus was parked south of Vineyard Square, on the west side of the street, and the truck was nine feet from the east curb of Moreau Drive, north of Vineyard Square. From measurements of skid marks, of distances, and from observation of the location and condition of the truck and bus, all made at that time, he gave it as his opinion that the collision occurred while the truck was west of the center line of Moreau Drive.

He stated that the skid marks began four feet west of the center line of Moreau Drive. He identified a plat of the streets and made marks thereon indicating the location and course of the skid marks observed by him and said plat was introduced in evidence and is here as an exhibit. On cross-examination he stated that the bus was eight feet in width; that, considering the width of the street and the point of impact, as he thought it to be, there would have been ample room for the bus to have passed the truck, to the west, without striking anything; that the bus driver told him that he did not see the truck until he hit it.

Counsel for defendant, during the above cross-examination, stated that it was admitted that the bus struck the truck towards the rear end and threw it around so that the left front of the truck struck the left front of the bus, causing a dent in both vehicles.

Officer Durham, of the Jefferson City police, testified on behalf of defendant. He was present with officer Dunavant when the latter visited the scene of the collision and corroborated the testimony of the prior witness as to the nature and location of the skid marks, but did not take measurements.

Constable Hatting testified on behalf of defendant to the effect that he visited the scene of the collision with the coroner's jury in the afternoon of the day the accident occurred. His testimony in regard to location of the skid marks is confusing and contradictory, and he finally said: "I just don't know."

Mr. Nelson, operator of the bus and an employee of defendant for many years, testified on behalf of defendant. He stated that he was operating the bus south on Moreau Drive in the right-hand traffic lane, 3 or 4 feet west of the center line, at a speed of twenty-five miles per hour; that he did not see the truck until he was twenty feet from it; that he then tried to apply his brakes and swerve to the west to avoid it but did not have time to do so; that the atmosphere was smoky and hazy, visibility not good; that the lights of the bus were burning; that the street light caused a glare which prevented his seeing the truck until the bus was under the street light; that he then saw the truck but could not state whether it was moving or standing still; that if he had had sufficient time to swerve he could have safely passed the truck on the west. On cross-examination he stated that the truck was "apparently" standing still. He admitted that, at the coroner's inquest, he had testified that the truck was standing still when he first saw it, and that he made no effort to stop the bus from the time he saw it until the collision occurred. He further testified to the effect that he went to Shady Acres, a night club near Jefferson City, around 10:00 o'clock or 10:30 P. M. of January 8, and remained there drinking beer and dancing until about 2:00 A. M.; that he thought he left there about 2:00 A. M.; that on January 8 he had driven a bus from 5:30 A. M. until 1:30 P. M., then lay down for a few hours before going to his mother's from which

place he went to Shady Acres; that there was no obstruction to his view southward on Moreau Drive, except the street light, from a point 500 feet north of the scene of the accident; that he stated at the inquest that he could see very well, that visibility was such that he could see for a half of a short block, or about 150 feet; that as he approached the scene of the collision he did not sound the horn. It was shown that, at the coroner's inquest, he testified to the effect that he did not know whether or not he went to bed on the morning of the collision before 5 o'clock.

Mr. Hart, proprietor of Shady Acres, testified to the effect that Nelson remained at that place, drinking beer and dancing, until at least 3 o'clock on the morning of the collision.

Every necessary element of a cause of action based on humanitarian negligence must have been established by the evidence in this case else the court's action in overruling the demurrer was error. [Dody v. Lonsdale, 158 S. W. (2d) 203, l. c. 207.] The necessary elements of a humanitarian case are that:

" '(1) Plaintiff was in a position of peril; (2) defendant has notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.' Evidence tending to prove these facts make a prima facie case for plaintiff." [Ziegelmeier v. East St. Louis & Suburban Railway Company, 51 S. W. (2d) 1027, l. c. 1029.]

This case must fail if the existence of any one of the above mentioned facts is left to conjecture or speculation; but, in establishing their existence, plaintiff may have the benefit of such of defendant's evidence as is consistent with his theory of the case and with his own testimony, Elkin v. St. Louis Public Service Company, 74 S. W. (2d) 600, l. c. 603, 604; and they may be established by circumstantial evidence and from legitimate inferences to be drawn therefrom, Lappin v. Prebe, 131 S. W. (2d) 511, l. c. 513. Such of defendant's evidence as is contradictory of plaintiff's theory and evidence may be disregarded.

According to plaintiff's testimony, and that of Clardy, the truck was headed into the east curb of a street forty feet wide, and was standing still when the collision occurred. The truck was sixteen feet long and the right front wheel was approximately eight inches from the curb. It was stationary. The rear end extended to within three feet of the center line of Moreau Drive, thereby blocking traffic on the east side of the street, but leaving a space twenty-three feet wide for traffic to the west of the truck.

Defendant's driver testified that the bus was being driven at a speed of twenty-five miles per hour. Mr. Bales testified to the effect that such a bus, traveling at that speed, could have been stopped within thirty feet. Defendant's operator said he saw the truck before the collision; that it was stationary; and that he could have swerved to the right (west) and could have passed in safety, had he seen it in sufficient time; that the lights of the bus were on; that he had formerly testified to the effect that, under the conditions prevailing at that time, he could have distinguished objects in the street, at that time and place, for a distance of 150 feet. Clardy stated that the atmosphere was clear and the moon shining. The bus driver contended at this trial that a street light tended to blind him as to objects beyond it; but no other witness mentioned that condition and the driver evidently failed to mention it in his testimony at the coroner's inquest. The jury could have disbelieved his testimony as to not being able to see the truck until he was within twenty feet of it; and they could have believed, from the evidence in the case, that he could have seen it from a point 150 feet south of the collision, as it began to make the U-turn.

There was evidence from which the jury could have found that the bus was proceeding southward, in the east traffic lane, before and at the time of the collision. If they believed such to be the fact it is material in this, a humanitarian case, irrespective of the fact that it might also constitute evidence of primary negligence. When the truck was making the U-turn, the front wheels at the center line of the street, twenty feet from the curb, *proceeding forward at six miles* per hour, the bus was somewhere north traveling at twenty-five miles per hour. Since the truck traveled nineteen feet from this point before the collision occurred, the bus must have traveled more than sventy-five feet during that time. The bus must have been more than seventy-five feet north of the truck when the front wheels of the truck were in the center line of Moreau Drive. It was, at that time, proceeding toward the east, the driver apparently oblivious of the approach of the bus and driving into its path. The bus driver then had knowledge, or could have known, that unless he gave warning, changed his course, slowed or stopped, a collision would occur unless the truck changed its course, stopped or accelerated its speed. However, it cannot be said that plaintiff came into a position of peril until after the truck actually entered the pathway of the bus, east of the center line of Moreau Drive. Considering the relative speed and course of the vehicles, as well as the distance traveled by the truck before it came to a stop, this occurred when the bus was more than thirty feet from the truck, the distance in which it could have been stopped; and from the speed and direction of the truck the jury could have believed that the bus driver could have known that the truck driver was oblivious of peril. According to his testimony at

this trial the bus driver did nothing until he was within twenty feet of the truck, which was too late for any action to avert the collision. We think there were sufficient facts in evidence, when viewed from a standpoint favorable to plaintiff's theory, to support a verdict based on humanitarian negligence.

Defendant claims that plaintiff's testimony, to the effect that the truck was standing on the east side of the center line of Moreau Drive at the time the collision occurred, is contrary to physical facts in evidence. If this contention be sustained then the above testimony of plaintiff and Clardy must be disregarded. [Freed v. Mason, 137 S. W. (2d) 673, l. c. 678.] To sustain its contention defendant points to the testimony of officers Dunavant and Durham, to the effect that all skid marks made by the truck at the time of the collision were located on the west side of the center line of Moreau Drive.

It will be remembered that neither officer saw the collision, and that Bales testified to the effect that the skid marks began some six feet east of the center line of the street. It cannot be said that the truck was struck at the point in the street where the skid marks began or were visible. Whether the immediate effect of the force of the collision was to partially lift and throw, or push, the truck some distance before the wheels again came into contact with the surface of the street; whether the truck was pushed some distance with the wheels in contact with the street surface but with not sufficient pressure to cause them to leave marks; whether the skid marks actually began where the wheels rested at the moment of impact; or at what moment, whether at the time of, or after the impact, the wheel broke down, are matters of conjecture and speculation. We cannot say that proof of the location of the skid marks, standing alone, constitutes proof of such a physical fact as to completely overcome and nullify the force of the positive eyewitness testimony of both plaintiff and Clardy. Defendant's driver admittedly testified at the coroner's inquest that the truck was stationary when he first saw it; but the jury may have refused to believe that it was standing crosswise with traffic lanes, in the center of or on the west side of the street as he said it was. The evidence as to location of the truck at the moment the collision occurred was conflicting and it was a question for the jury.

Defendant urges that error was committed in the giving of plaintiff's main instruction, numbered one. It authorized a verdict upon a finding of failure to stop, swerve, or warn. It is urged that there is no duty to warn where there is no evidence of obliviousness of peril, and that there is no such evidence in this case. Plaintiff and Clardy testified to facts which, if true, established that they were unaware of the approach of the bus, or of their peril. There was evidence from which the jury could have found that plaintiff was in peril and oblivious thereof, and that the bus driver could have discovered and have know same in time to have acted effectively to avoid the collision.

It is also criticised for the reason that, "There was no evidence in the cause that appellant saw or could have seen respondent in imminent peril in time to have avoided the collision, or that he could have stopped or swerved or given a warning. There was no evidence as to the danger zone." In holding that a submissible case was made we have, in effect, ruled against defendant as to these points.

It is claimed that the instruction enters the field of antecedent negligence, which, if true, renders it erroneous. However, defendant does not point out on what theory this conclusion is reached, unless it be on the theory that there was no evidence of obliviousness. Since we have held that there was such evidence, what was said in Lotta v. Kansas City Public Service Company, 342, Mo. 743, 117 S. W. (2d) 296, l. c. 300, relative to this subject is not in point here.

Defendant contends that error was committed in excluding from evidence certain ordinances of Jefferson City relating to "U-turns" and "Through Streets," on the grounds that such ordinances would have had a bearing in proving that plaintiff's injuries were caused solely by his own negligence. We are unable to determine, from what defendant states in its brief on this point, how or in what manner said ordinances, had they been admitted in evidence, would have tended to prove the issue of sole cause; nor do we think they would have done so. At the time such ordinances were offered in evidence plaintiff had, previously, dismissed from the petition all allegations based on primary negligence. Contributory negligence is no defense in this case. The court permitted a sole cause instruction. No error was committed in excluding the ordinances from evidence.

It is urged that plaintiff's instruction two, on the measure of damages, was erroneous because it authorized the jury to allow such damages as they believed plaintiff had sustained even though there was no evidence thereof. The instruction is as follows:

## "INSTRUCTION NO. 2.

"The Court instructs the jury that if you find the issues for the plaintiff under the evidence · and the other instructions herein, then you can return a verdict in plaintiff's favor for such an amount as in your judgment will reasonably compensate plaintiff for the injuries, if any he suffered on the occasion in question. (Given No. 2 E.T.E.)"

In connection with this contention it is pointed out that there was evidence of medical care but no evidence of the amount expended therefor. In Kirk v. Kansas City Terminal Railway Company, 27 S. W. (2d) 739, l. c. 746, we held that where the instruction did not (as it did not here) direct a verdict, and is liable to be construed as authorizing damages for injuries suffered or expenses encurred because couched in broad general language, defendant was entitled to an instruction limiting the effect of the language employed, but that,

not having asked such an instruction, the instruction would not be held bad on that ground. To the same effect see Wolfe v. Kansas City, 68 S. W. (2d) 821, l. c. 825. Accordingly we hold that the instruction was not reversibly erroneous because of the reason assigned.

Plaintiff's petition contained allegations to the effect that he would "be unable to work for a long period of time" because of injuries received in the collision. Over timely objections entered by defendant he was permitted to offer medical opinion evidence to the effect that his injuries were permanent. Defendant contends that the admission of such testimony was error.

We have held that "There is a vital difference between suffering or damages in the future, that is, after the trial, and damages from permanent injury. The former will persist after the trial, but may not continue to exist; while the latter will last throughout life." [Colby v. Thompson, 207 S. W. 73, l. c. 74.] The allegation above mentioned was not tantamount to an allegation of permanent injuries.

The court, in the opinion above quoted, was considering a case where the instruction permitted a verdict based on permanent injuries absent either pleading or evidence in support thereof, and the judgment was reversed. In State ex rel Kansas City Public Service v. Shain, 165 S. W. (2d) 428, l. c. 431, the giving of an instruction authorizing a verdict based on permanent injuries when there was no evidence of such injuries was held to be reversably erroneous although there was no complaint or finding that the judgment was excessive. Here, there was evidence of permanent injury but there was no allegation thereof. The instruction on the measure of damages did not refer to permanent injuries. There is no complaint that the verdict and judgment is excessive. In such circumstances we think error was committed; but was it such error as affects the merits of the case and calls for reversal? See Section 1228 R. S. Mo. 1939; Mo. R. S. A. par. 1228.

In State v. Shipley, 174 Mo. 512, l. c. 516, relied on by us in State v. Byrnes, 177 S. W. (2d) 909, l. c. 912, it was held "Error is presumptively harmful, and it devolves upon the party who commits it to show that it could not possibly have resulted in injury." Both of the last cited decisions were handed down in criminal cases where courts are inclined to jealously guard the rights of an accused; but the principle that error is presumed to be harmful is equally applicable in a suit for damages. In a civil suit it should appear from the record that no substantial harm was suffered by the party against whom error was committed.

While it cannot be said that plaintiff's instruction on the measure of damages is erroneous, for the reasons heretofore given, the broad language there used permitted the jury to consider *all* of the evidence before it tending to prove the nature, extent, and duration of his

injuries, and to assess such damages as they thought would compensate him therefor. Presumably they did just that. We cannot say that they did not do so; nor can we say that their verdict would have been for the amount that it was if evidence of the permanency of the injuries had not been before them. On the record before us we hold that the error was prejudicial, such as affects the merits of the case.

Plaintiff says that no error was committed because when evidence tending to prove an issue not pleaded was admitted the petition could have been amended on motion to conform to the proof, and that, if not amended below, the petition will be treated here as though it had been amended. [Koonse v. Standard Steel Works, 300 S. W. 531, l. c. 536 and Stevens v. Westport Laundry Company, 25 S. W. (2d) 491, l. c. 497, are cited.] The rule stated in those cases by this court is well settled; but *where objection is made* to the reception of such evidence as is outside of and beyond the issues made by the pleadings that rule has no application.

Since no error is found except such as relates to the amount of damages, the judgment should be reversed and the cause remanded for a new trial on the issue of the amount of the damages only. [Zarisky v. Kansas City Public Service Company, 186 S. W. (2d) 854, l. c. 857.] *Boyer, C.,* concurs

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded for a new trial on the issue of the amount of the damages only. All concur.