George M. ANDERSON (Plaintiff),
Respondent,

v.

Baylis Rector GLASCOCK (Defendant),
Appellant.

No. 28946.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1954.

Motion for Rehearing or to Transfer to
Supreme Court Denied Oct. 15, 1954.

Fuller, Ely & Hibbard, Hannibal, for appellant.

Carstarphen & Harvey, Hannibal, Schmiedeskamp & Jenkins, Quincy, Ill., for respondent.

ARONSON, Special Judge.

This is an action for damages for personal injuries and property damage caused in a collision between an automobile driven by respondent (plaintiff) and a horse owned by appellant (defendant) which had strayed from his enclosure onto the public highway; and involves in part the "Stock Law" of this state, relative to restraining domestic animals from running at large. The verdict of the jury was in favor of respondent in the sum of $4,000 on his claim, and was also in his favor on a counterclaim. Originally filed in the Circuit Court of Ralls County, it went on change of venue to the Hannibal Court of Common Pleas.

Defendant, as appellant here, makes but three complaints of alleged error in the trial of the case, his assignments being directed against two instructions given at the request of respondent, P-2 and P-5, and one instance of allegedly improper admission of evidence. Since there is no question raised as to the sufficiency of the evidence to make a jury question as to appellant's liability, and no charge of excessiveness of verdict, it will not be necessary to make a detailed

statement of the evidence and only enough of the facts will be given as may be necessary for a proper understanding of the instant issues.

The petition is in two counts, the first predicating liability on violation of the Stock Law, the second being on the basis of common-law negligence. The answer, after denial of plaintiff's averments, pleaded contributory negligence, and as a "second affirmative defense" alleged that defendant's horse was safely and securely placed within defendant's fenced enclosure and escaped therefrom "through no intent, fault or negligence of defendant." There was also a counterclaim for $95 for the loss of the horse.

The evidence disclosed that at about 11 p. m. on October 6, 1952, plaintiff, a hardware salesman of Quincy, Illinois, then age 57, was driving his 1952 Pontiac sedan eastwardly on Highway 19 about one and a half miles west of the city of New London in Ralls County, at a rapid rate of speed, when defendant's horse came upon the paved highway from the south shoulder of the road, and a violent collision ensued, resulting in the death of the horse, the injury of the plaintiff and the wrecking of his car.

The horse, with one other also owned by defendant, was regularly kept on defendant's farm and dairy property on the north side of the highway. Here there was a field, separated from the highway by a wire fence, called the outer pasture. Beyond this field, was another known as the inner pasture. The house, barn and other farm buildings were located in the inner field, about one-half mile from the highway.

There was a second wire fence between the two fields, with a gate for passage. The gate was only ten feet long, in a thirteen foot opening, so there was at the west end of the gate a three foot panel, made of oak planks, which was wired to a fence post on one side and fastened to the gate by a bar which fitted into sockets.

A cattle gap was being built in the outer pasture, and so a panel of the fence there had been removed and loosened, but at night this panel was wired to the fence posts.

During the late afternoon of October 6, defendant's nephew and neighbor had seen that the horses had gotten from the inner pasture into the outer pasture. With his son, he ran them back into the inner field, closed the gate and fastened it by putting the bar in place.

At ten p. m. defendant's employe found the oak panel at the gate between the fields broken and lying on the ground. The two horses were on the highway. He notified defendant, who, with one Yaeger, attempted to drive the animals back into the pasture, but the horses instead ran into the driveway of the defendant's nephew's adjoining property to the east. As defendant attempted to cause the horses to go toward the entrance to his property, they crossed the road to the south shoulder. Then plaintiff's car approached, the one horse came back onto the road in front of it, and the impact occurred. Out of control, the automobile went through fences and into a field in a somewhat circular course, until it stopped against a post at a point about 300 feet north of the highway. The body of the horse was carried or thrown to the north shoulder of the road.

Believing this very sketchy statement of the facts to be sufficient for the limited issues presently for decision, (the issues of negligence and contributory negligence concededly being for the jury) we turn to a consideration of instruction P-2. Although there were two counts in the pleadings, the submission of the case to the jury was wholly without reference to "Counts." No instruction referred to any count, and the forms of verdict also dealt with the case as if there was but one count (apparently by consent.) Instruction P-1, not here attacked, covered the theory of common-law negligence. Instruction P-2 was as follows:

"The court instructs the jury that the provision of law described and

known in the evidence in this case as the 'Stock Law' was in force and effect in Ralls County, Missouri, at the time of the collision of the horse and the plaintiff's Pontiac automobile mentioned in the evidence, it having been adopted by election and proceedings in that county. The Court further instructs the jury that if you find the said horse was the property of defendant Glascock and was at the time and place loose and unrestrained on the public highway in violation of the stock law as defined in these instructions, if so, then you will find the defendant was negligent in not restraining the animal in an enclosure, and if you further find that the collision described in the evidence with its injury and damages to plaintiff, if any, was a direct and proximate result of such negligence, if so, then your verdict will be for the plaintiff."

The stock law was adopted by the voters of Ralls County at an election held on November 8, 1892, and has ever since been in force in said County. The statute is now Section 270.010 RSMo 1949, V.A.M.S., and, so far as pertinent here, reads:

"Domestic animals restrained from running at large.—It shall be unlawful for the owner of any animal or animals of the species of horse, mule, ass, cattle, swine, sheep or goat, in this state, to permit the same to run at large outside the enclosure of the owner of such stock, and if any of the species of domestic animals aforesaid be found running at large, outside the enclosure of the owner, * * * the owner shall * * * also pay all persons damaged by reason of such animals running at large, the actual damages sustained by him or them; provided, that said owner shall not be responsible for any accident on a public road or highway if he establishes the fact that the said animal or animals were outside the enclosure through no fault or negligence of the owner. * * *"

The proviso above quoted was added to the statute by an amendment in 1939; the other parts of the section have been the law of this State since 1883. All case law in Missouri on this subject is prior to the 1939 amendment.

It would undoubtedly be an interesting exercise to review all the law on the liability of the owners of animals for injuries inflicted upon others in collisions upon public highways; but such considerations as recognition of the rapid expansion of law office libraries and the desirability of some degree of brevity, when appellate issues are limited, compel us to resist the temptation. Those who would read further may consult the two Annotations at 45 A.L.R. 505 and 140 A.L.R. 742 on "Liability for damages to vehicle or person riding therein by animal at large in street or highway," with later cases listed in the A.L.R. Blue-Book; and may also read in 34 A.L.R.2d 1285 (a volume published since the briefs herein were written) the note entitled "Owner's liability, under legislation forbidding domestic animals to run at large on highways, as dependent on negligence."

Many lawsuits have been brought against the owners of animals, to recover for injuries sustained in collisions, where the theory of liability is common law negligence. Such is the case of Lins v. Boeckeler Lumber Co., 221 Mo.App. 181, 299 S.W. 150, in which judgment fixing liability upon defendant was affirmed by this court in 1927. Other suits are brought under stock laws, where in force, such as our case of Moss v. Bonne Terre Farming & Cattle Co., 1928, 222 Mo.App. 808, 10 S.W.2d 338, and the decision of the Springfield Court of Appeals in Carr v. Threlkeld, Mo.App., 1930, 31 S.W.2d 592. When the basis of the action is statutory, the precise language of the applicable statute is controlling, and cases from other jurisdictions involving differently-worded statutes are not helpful. Unfortunately, there has been no Missouri decision since the 1939 amendment of Sec. 270.010, adding to the statute the proviso above quoted.

Appellant's attack upon Instruction P-2 is to the effect that said instruction makes the owner of livestock absolutely liable when same is found on a public highway, and an injury proximately results, and appellant says the absolute liability doctrine is not the law of this state.

It is to be noted that the statute, supra, makes it unlawful for the owner of a horse, mule, etc., "to permit" the same to run at large. Instruction P-2 makes no reference to *permitting*, but is based upon the mere presence of the horse loose and unrestrained on the highway.

In 34 A.L.R.2d 1289, it is said:

"Where the particular statute involved provides that the owner shall not 'permit,' 'allow,' or 'suffer' his animals to run at large, the courts have generally held, or recognized, that statutes of this type are not violated in the absence of at least negligence by the owner of the animals."

We think there is clear error in this instruction, basing liability on the mere presence of the horse on the public highway, loose and unrestrained, and making no reference to whether it was there because so permitted by appellant, intentionally or by his negligent conduct. Our statute does not provide for absolute liability, whenever the animal is on the highway, but prescribes liability when the owner *permits* it to be there, which means that by his action or inaction he has had something to do with the presence of the animal on the highway. The proviso especially makes clear the legislative intent that there be no liability, if there be no fault or negligence.

Even before the amendment of 1939, the Moss and Carr cases, supra, had not declared the rule of absolute liability as the law of Missouri. True enough, there is one sentence in Moss v. Bonne Terre Farming & Cattle Co., supra, which speaks of absolute liability, but there are many others which declare that negligence must be found as a necessary predicate to liability. It is to be remembered that prior to the Moss case there had been no case in Missouri of injury to a person or property on the highway, in which the "Stock Law" had been invoked; and, too, that at that time (a decade before the 1939 amendment, adding the proviso to the statute) the statute made no reference to roads or highways (said words being first introduced into the statute by the proviso-amendment.) Similar statutes had been construed in some other states as only providing for liability for damage done by stock trespassing in other fields and as not covering damage done on highways in collisions (see Annotation at 140 A.L.R. 742). No question was raised along that line in the Moss case [222 Mo.App. 808, 10 S.W.2d 340]. The court took note of the fact that, as then worded "this statute does not expressly declare a defense that the animals broke out through no fault of the owner", (an omission later clearly supplied by the amendment-proviso) ; and yet consistent reference is made to prima facie proof of negligence. See summary of this case in 34 A.L.R.2d loc. cit. 1288.

Respondent in his brief construes the Moss case as standing for the proposition that there is prima facie showing of negligence when facts are as there and as here, with the stock owner, as in a res ipsa loquitur case, called upon to explain and to excuse himself; and construes the addition of the proviso to that statute as a legislative approval of that doctrine with the single change of the burden being on defendant to establish no negligence.

Carr v. Threlkeld, supra, makes no reference to absolute liability, and is altogether written on the theory of prima facie showing of negligence, or the res ipsa loquitur theory.

In any event, the amendment of 1939, adverted to above, removes all doubt that it is the legislative intent that the stock law does not create absolute liability, without negligence; on the contrary, fault or negligence is the crux of liability, but the statute now places the burden of proof on the issue upon the owner of the stock.

The inclusion in Instruction P-2 of the phrase "in violation of the stock law as defined in these instructions" cannot compensate for the omission of a finding that the appellant as owner *permitted* his horses to be loose and unrestrained. This is language too obscure and oblique to be accepted as tantamount to a finding of fault or negligence, on the part of appellant.

Moreover, in this aspect, the instruction is subject to the criticism of leaving it to the jury to determine the law, i. e., to decide what is in violation of the stock law, or else, it assumes that the very presence of the horses on the highway is a violation of the law.

Besides the Moss and Carr cases, supra, respondent has cited four cases from other jurisdictions, mentioned in the footnote.[1] The last three of these were grounded wholly on common-law negligence. Only the Serr case[1] involved a statute restraining the permitting of animals to run at large. The instruction in that case, approved by the Supreme Court of Minnesota, is in many respects different from Instruction P-2 in this case.

It is not suggested by respondent that Instruction P-2 is a copy of a judicially-approved instruction. Indeed, we fail to find the exact counterpart of this language in any of the cases. In Carr v. Threlkeld, supra [31 S.W.2d 594], it was held that it would have been proper to have told the jury that if they found that defendant's horses were on the highway "that is prima facie evidence of the negligence of the defendant." But even that would be of doubtful propriety today. See McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641.

There are many expressions used in appellate opinions which are not proper for incorporation in instructions to juries. In passing upon motions for directed verdicts courts often say that plaintiff has made a prima facie case, or that certain facts authorize a presumption of negligence; but trial courts frequently may not use the same language, in instructions which submit to juries the finding of facts. Thus in 140 A.L.R., loc. cit. 750, it is said that "where an accident occurs as the result of a violation of such a statute a presumption of negligence on the part of the owner of the animal arises, which is sufficient to carry the case to the jury" but the quoted language (omitting the last ten words) may not properly be used in an instruction, under the McCloskey case, supra.

Respondent argues that Instruction P-2 must be read with P-3, which stated as follows:

"The court instructs the jury that by the provision known as the 'Missouri Stock Law' is meant that provision of this state that requires that horses, among other animals, be restrained in an enclosure of the owner or possessor, and not permitted to run at large and onto the highway in question, and one violating the said Stock Law 'shall also pay all persons damaged by reason of such animals running at large the actual damages sustained by him or them' unless you find that said horse was outside the enclosure through no fault or negligence of the owner."

Instruction P-2, quoted in the fore-part of this opinion, contained the phrase, "in violation of the stock law as defined in these instructions." Thus, it made no specific mention of P-3, nor did it incorporate the language of P-3 by specific reference. However, all instructions are to be read together.

It is to be noted that Instruction P-3 encloses certain words in quotation marks, but does not accord similar prominence to other words. Those which are within the quotation marks are thus given special emphasis, and by contrast, the impression is conveyed that the other words are not in the exact words of the statute. The con-

---

1. Serr v. Biwabik Concrete Aggregate Co., 1938, 202 Minn. 165, 278 N.W. 355, 117 A.L.R. 1009; Galeppi Bros. Inc. v. Bartlett, 9 Cir., 120 F.2d 208; Bender v. Welsh, 344 Pa. 392, 25 A.2d 182; Drew v. Gross, 112 Ohio St. 485, 147 N.E. 757.

cluding words of P-3, following the quotation-marked words, as well as the phrase preceding such words, would not necessarily be understood by the jurors as part of the statute. We hold, therefore, that Instruction P-3 does not clearly supply the deficiencies of P-2.

Respondent also directs our attention to Instruction D-3, given at the request of appellant, which reads:

"Under the law, the plaintiff is not entitled to recover from the defendant merely because the defendant's livestock escaped from the defendant's pasture and got upon a public highway and thereby caused damage to the plaintiff. If the defendant, by the greater weight of the credible evidence in the case, proves that such livestock were present on the highway without any fault or negligence on the part of the defendant or his agent, then there is no liability placed upon him, but the burden of so proving rests upon the defendant. The jury are entitled to infer negligence on the part of the defendant from the mere fact of the escape of the animals and the subsequent happening of the accident, but any such inference is not conclusive. That is, it must be weighed and balanced by you against any evidence offered by the defendant to show that he, the defendant, was not guilty of any fault or negligence; and if, after so weighing and balancing the evidence, you find from the greater weight of the credible evidence in the case, that the horses in question escaped without any fault or negligence on the part of the defendant, then you must return a verdict for the defendant on the plaintiff's cause of action."

■ This does not aid respondent; rather it emphasizes the error in P-2 for the two are clearly in conflict. The first sentence in D-3 cannot be reconciled with Instruction P-2. D-3 is a correct statement of the law, and another instruction which conflicts with it and thus vitiates it, should not have been given.

■ We must remember that P-2 is a verdict-directing instruction. As such it must not omit any necessary element, such as the element here of the owner's "permitting." Banta v. Union Pacific R. Co., 362 Mo. 421, 242 S.W.2d 34; Griffith v. Delico Meats Products Co., 347 Mo. 28, 145 S.W.2d 431; Daggs v. Patsos, Mo.App., 260 S.W.2d 794. Such omission cannot be cured by including the omitted element in other given instructions: same cases.

■ It has been demonstrated that there was conflict between instructions given at the request of respondent and instructions given at the request of appellant. Such conflict is confusing to the jury and, therefore, constitutes prejudicial error.

Appellant's second assignment complains of Instruction P-5 which reads as follows:

"The Court instructs the jury that if you find the issues for the plaintiff, in arriving at plaintiff's damages, if any, you are to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of said injuries, also the physical and mental suffering to which he may have been and will be subjected by reason of said injuries, if any, *together with the expenses, if any, to which he may have been subjected or will be subjected as a result of such injuries*, the loss of time, if any, that may have directly resulted to plaintiff or will directly result to plaintiff from his injuries, if any, caused by the negligence of the defendant, if you so find, and you are to allow him such a sum in damages as in your opinion will be a fair and just compensation for said injuries and losses so sustained." (Emphasis ours, to indicate the point of complaint.)

It is appellant's argument that the indicated phrase was improperly incorporated in the instruction because there was no evidence of the amount of respondent's medical and hospital expenses, and, therefore, no basis for submitting expenses as an element of damage.

Respondent asserts that no error in an instruction relating solely to the measure of damages, such as P-5 here, could possibly be prejudicial, in a case where, as presently, there was no complaint of excessiveness of verdict in motion for new trial and no assignment of error on appeal charging excessiveness; and says that no complaint against such an instruction should be entertained on appeal, for prejudice could only be reflected in an excessive verdict; and respondent cites such cases as Benfield v. Thompson, Mo.App., 139 S.W.2d 1009, loc. cit. 1012. While there is much cogency in the opinion in that case, it has never since been cited; and we find that it is inconsistent with the last word of our Supreme Court on the subject. In State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 325, 165 S.W.2d 428, 432, it was said:

"Respondents' opinion also mentioned that the Service Company had not made any claim that the verdict was excessive. A ruling made by the St. Louis Court of Appeals in the case of Higgins v. Terminal R. Ass'n of St. Louis, 231 Mo.App. 837, 97 S.W.2d 892, loc. cit. 897(7), was quoted as authority that unless such a point was made an instruction authorizing permanent damages when not supported by evidence was harmless error. * * However, in many cases in this court as well as in the Courts of Appeals the question of the propriety of an instruction upon permanent damages has been considered without any mention being made of whether the party had also complained of the verdict being excessive. See Derschow v. St. Louis Public Service Co. [339 Mo. 63, 95 S.W.2d 1173], and Weiner v. St. Louis Public Service Co. [Mo.Sup., 87 S.W.2d 191], supra, and the following cases from the courts of appeals: Putnam v. Unionville Granite Works [Mo.App.], 122 S.W.2d 389; Farrell v. Kroger Grocer & Baking Co. [Mo.App.], 71 S.W. 2d 1076; Chilcutt v. LeClair [Mo. App.], 119 S.W.2d 1. Note that the St. Louis Court of Appeals in a case subsequent to the Higgins case reversed a judgment where an instruction was given authorizing permanent damages, absent evidence to sustain the same, and no mention was made of an assignment of error that the verdict was excessive. See Svehla v. Taxi Owners Ass'n [Mo.App.], 157 S.W.2d 225, loc. cit. 228(7). In the Higgins case the judgment was reversed and the cause remanded on other grounds. The ruling in the Higgins case seems not to be supported by any cases and we do not deem it to be a sound rule."

See also Zarisky v. Kansas City Public Service Co., 239 Mo.App. 396, 186 S.W.2d 854, 856, and Gurwell v. Jefferson City Lines, 239 Mo.App. 305, 192 S.W.2d 683, 690.

In view of this holding, we must rule this issue on its merits. Appellant relies on the cases of Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 856-7, and Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 65, holding that doctor's and hospital bills, or "necessary expenses * * * for medical attention" may not be submitted for consideration by the jury in a measure of damages instruction, without basis in the evidence.

On the other hand, respondent, while agreeing that doctor's bills and hospital bills are items of special damages, and must be proved by evidence before reference may properly be made to such items in an instruction, claims that this instruction did not refer to medical expense, but to expenses generally; not to special damage, but to general damage or expense. The cases relied on by respondent, Murray v. Missouri Pacific Railway Co., 101 Mo. 236, 13 S.W. 817, and McDonough v. Freund, 323 Mo. 346, 19 S.W.2d 285 merely hold that while doctor's bills or the value of their services must be proved and are not matters of common knowledge, nurse's services are such that the value thereof is a matter of common knowledge and no specific proof is required.

Under the evidence in this case we cannot fathom what kind of past and future

expenses were contemplated in the drafting of P-5, unless they were hospital and medical expenses. There is no suggestion in respondent's brief as to what other expenses could have been intended.

We think the jury probably understood the reference to expenses to include medical and hospital expenses. Every other type of loss was specifically mentioned in the instruction. In no other place could medical and hospital expense fit (and surely a juror of any experience would believe that such expenses should be included in an assessment of damages); and the jury were not told they should omit such expenses from consideration.

■ An item of damages is not made one of special damages by calling it a medical matter. It is the reference to "expense" that makes special damages, and there must always be proof, except where common knowledge exists and can stand in lieu of proof.

■ There was no evidence by any witness as to the charge made for, or the reasonable value of, the services of respondent's doctor or the hospital; and so the jury were left to speculate as to the past expenses, not to mention those in the future. It was error to invite them to such speculation by the easily misunderstood reference to expenses in Instruction P-5, without basis in the evidence.

The matter involved in the third assignment of error may not arise again on re-trial, but yet should have our attention briefly. Appellant complains that respondent was "permitted * * * to show that about a year before this accident, another horse belonging to the defendant had gotten out on the highway and been struck by an automobile." However, this does not aptly describe what occurred.

■ The respondent did not undertake in the presentation of his case to prove another incident of collision between another horse and an automobile. The situation arose in the course of the cross-examination of appellant. As previously noted, appellant had the burden to prove that his animal was outside the enclosure through no fault or negligence on his part, that is, that he had not been negligent. As shedding light on that subject, respondent's counsel was properly endeavoring to demonstrate that the propensities of this horse were such, and were known by appellant to be such, that the measures taken by appellant to keep the horse in an enclosure were not adequate and that he was negligent. He asked if the horse was not a roguish horse and if it had not been on the road quite frequently before. Objection made to the last question was properly overruled, for the answer could tend to show whether appellant used adequate methods of restraint in the exercise of proper care or was negligent in using methods which he knew would not successfully restrain his horse within the enclosure.

■ The cross-examiner pressed appellant to say that the horse had been out on the road "quite a number of times." Appellant answered "a few times." Counsel asked if the horse had not been out on the road on the previous November 5 when its then mate ran into the car of one Bontz and was killed. There was no objection. Appellant said he thought the horse was out on that earlier night. When respondent's attorney then pressed the point by inquiring whether on the earlier occasion while the horse was on the road, another horse had run into a car and been killed, on objection being made, the question was withdrawn. No further relief was then asked by appellant. On this record, we cannot rule the trial court to have been in error, by abusing his discretion in determining the proper scope of cross-examination or permitting improper evidence to be presented to the jury.

For the errors committed in the giving of Instructions P-2 and P-5, the judgment must be set aside and the cause remanded to the Hannibal Court of Common Pleas for re-trial.

RUDDY, Acting P. J., and BENNICK, J., concur.