# COLE v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, June 20, 1904.

1. **NEGLIGENCE: Master and Servant: Defective Appliance: Servant's Knowledge: Pleading.** In a suit by the servant for injuries traceable to a defective appliance, it is not necessary to allege in the petition that the defect which it is alleged caused the injury was unknown to the plaintiff.

2. ———: ———: ———: ———: **Continued Use.** If the condition of the defective appliance was such that the servant might reasonably have supposed that he could safely use it by taking due care, he is not chargeable with the fact that he continued to use it, knowing its bad condition. It is only when the danger from the defective appliance is so obvious as to render the servant's act in using it contributory negligence, that its continued use bars recovery.

3. ———: ———: ———: ———: ———: **Deference to Master's Assurances.** The servant, when in doubt, is justified in deferring somewhat to the assurances of his master or his master's representatives that he can continue to use the defective appliance with safety.

4. ———: ———: **Measure of Damages: Previous Earning Capacity.** Where the testimony tends to show that the servant is permanently injured and his capacity for earning a living is impaired, it is proper to admit evidence as to the kind of business the servant had been engaged in before his employment by the master began and the amount of his earnings in that business. Especially should this be the rule where the servant is 46 years old, had been in the defendant's employ only nine months, and no assignment is made that the verdict is excessive.

5. ———: ———: **Instruction: Assumption that Employee is Vice Principal.** An instruction should not assume that an employee who directed the plaintiff to continue to use the car with a defective brake had authority to order a discontinuance of the use of the car, and, therefore, was his master's vice principal. But when that servant so testifies and the assistant superintendent and others so testify and the point is not con-

Vol 183 mo—6

troverted at the trial, the error in an instruction which makes that assumption does not so affect the merits as to justify a reversal of a judgment against the company.

6. ———: ———: **Degree of Servant's Care.** In a suit against a street railway company by a gripman for injuries caused by the careless running into his car of another of the same master's cars, the injured gripman was not required to exercise the high degree of care due from a common carrier to passengers, but "reasonable and ordinary care as a gripman on said car."

7. ———: ———: **Assumption of Risk: Contributory Negligence.** The servant does not assume the risk of the master's negligence. He simply assumes the risk of the dangers incident to his employment. If the master furnishes the servant unsafe implements and he uses them, knowing them to be unsafe, a question of contributory negligence arises, but not of assumption of risk.

8. ———: ———: **Combined Negligence of Master and Fellow-Servant.** Where the case is bottomed on the negligence of the master, an instruction is not erroneous that tells the jury, in effect, that, if the master was negligent, his negligence is not excused by the fact that the negligence of the fellow-servant of plaintiff contributed with that of the master to cause the injury.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

AFFIRMED.

*Geo. W. Easley* with *Boyle, Priest & Lehmann* for appellant.

(1) The court erred in not sustaining the defendant's demurrer to the plaintiff's amended petition. The petition nowhere alleges that plaintiff did not know of each and every one of the alleged defects and omissions set out in the amended petition. There is an apparent conflict of authority on the question of whether an employee, suing for an injury arising from a defective appliance, must in his pleading negative knowledge of the existence of such defect. That conflict has grown up by some courts treating contributory negligence and as-

Cole v. St. Louis Transit Co.

sumption of risk as identical in principle. Beach on Con. Neg. (3 Rev. Ed.), p. 538, sec. 370; Railroad v. Sanford (Ind.), 19 N. E. 770. The rule that the employee assumes the risks from injury arising from defects of which he has full knowledge, has but few exceptions. Those exceptions have generally been fastened on the rule in case where the attempt was to make the fact of knowledge stand for and become proof of contributory negligence. Flynn v. Railroad, 78 Mo. 195; Crane v. Railroad, 87 Mo. 588; Johnson v. Railroad, 96 Mo. 340; Young v. Shickle, etc., Co., 103 Mo. 324. In none of these cases did the question fairly arise, as a question of pleading, whether the plaintiff must negative knowledge of a defect which has caused his injury. The minority of cases dispose of the question on the ground that contributory negligence need not be negatived, and, by treating assumption of the risk as identical with contributory negligence, adopt the rule that it need not be negatived in pleading. This is illogical and can not be justified by any fair reasoning. The great weight of authority and of reason is to the effect that it is necessary to allege ignorance of the defects in order to show that the injury complained of was not the result of some hazard assumed by the employee. 13 Ency. Pl. and Prac., p. 903; Beach on Con. Neg. (3 Rev. Ed.), secs. 353, 360; Railroad v. Daley, 110 Ind. 75, 10 N. E. 631; McDermott v. Railroad, 87 Mo. 285; Wood on Master and Servant, secs. 382, 414 and 422. (2) The court erred in admitting evidence of what plaintiff had earned in other and distinct business from that in which he was engaged at the time of his injuries, and in years long antecedent to his injuries. This evidence was too remote, and invited the jury to conjecture and speculate in regard to the future earnings. There was no allegation in the petition that would admit proof of these prior earnings in a different occupation. When not alleged, they could not be proven. 5 Ency. Pl. and Prac., 717-719; Railroad v. Donnelly, 87 Fed. 135.

(3)   The defendant's demurrer to plaintiff's evidence should have been sustained.   The following facts appeared from the undisputed evidence offered by plaintiff:   (a) · That the plaintiff knew that the brake did not work so as to brake the rear coach.   (b)   That he knew that it took longer to stop the train, in the condition he knew it to be in, than if it had worked on the rear coach, and that ordinary care required the gripman, under such conditions, to take additional precautions in operating the train.   (c)   That plaintiff knew that the motorman on the Cherokee car was not observing the car plaintiff was operating, but was, in fact, looking in the opposite direction.   (d)   That with all this knowledge, plaintiff started his train at about the same instant the Cherokee car started, and that his car, in consequence thereof, struck the Cherokee car.   (e) · That the track had not been sanded and was slick and slippery and the train liable to slide.   These facts being undisputed, and not contradicted by any one, it became, and was, a question of law whether the plaintiff was guilty of contributory negligence.   These undisputed facts left no room for doubt, and the court should have decided the question of contributory negligence as a question of law.   Beach on Con. Neg. (3 Rev. Ed.), secs. 447, 449.

(4)   The court erred in giving the first instruction for plaintiff.   It is erroneous in the following particulars: (a)   It erroneously assumes that defendant's starter, Gold, was not a fellow-servant of plaintiff, but was a vice principal of defendant.   McGowan v. Railroad, 61 Mo. 528; 12 Am. and Eng. Ency. of Law (2 Ed.), 1019.   As a matter of law, the car-starter, Gold, was not a vice principal.   Sams v. Railroad, 174 Mo. 53. The question of Gold's authority should have been submitted to the jury on the evidence offered by plaintiff, and the jury instructed as to the legal effect of such facts, if the jury found them to be true.   It was a debatable question, on the evidence, as to what Gold's authority was.   (b)   It erroneously states the degree of

care required of plaintiff. It only requires that the plaintiff should have exercised "reasonable and ordinary care as a gripman on said car." Under the facts of this case, the plaintiff was charged with a much higher degree of care than suggested in this instruction. (c) It ignores the defense pleaded by defendant, that the plaintiff "assumed the risk of injury" from the defaults alleged against defendant. An instruction which ignores a substantial defense which is supported by the evidence, and no other instruction given in the case curing this error, is fatally defective. Sullivan v. Railroad, 88 Mo. 169; Owens v. Railroad, 95 Mo. 169; Hanheide v. Railroad, 78 S. W. 820; 11 Ency. Pl. and Prac., p. 190, par. 14.

*R. P. & C. B. Williams* for respondent.

(1) Where the negligence of the master is combined with the negligence of the fellow-servant in producing the injury, the master is liable, and the negligence of such fellow-servant can not avail the master as a defense. Deweese v. Meramec Iron Mining Co., 128 Mo. 423; Young v. Schickle, etc., Co., 103 Mo. 324; Browning v. Railroad, 124 Mo. 55; Ellingson v. Railroad, 60 Mo. App. 679; 12 Am. and Eng. Ency. of Law (2 Ed.), 905; Haworth v. Railroad, 94 Mo. App. 215. (2) If there is concurrent negligence of the master and fellow-servant, and the injury would not have occurred but for the negligence of the master, the master is liable. Authorities under point 1. (3) There was no assumption of risk on the part of plaintiff by continuing in the service of the defendant after knowledge of the defective appliances, and defendant's failure to repair. The defects were not so obviously and glaringly hazardous that a prudent person would not use them. Pauck v. St. Louis Beef and Prov. Co., 159 Mo. 477; Halloran v. Union Iron and Fdy. Co., 133 Mo. 470; Haniman v. Kansas City Star, 81 Mo. App. 124. (4) Complaint

and notice of the defective appliances to Richardson, defendant's foreman at the power house, and to Gold, defendant's starter at the Fourth street terminus, was notice to the defendant. Keown v. Railroad, 141 Mo. 86; Bradley v. Railroad, 138 Mo. 293; 1 Shearman & Red. on Neg., 222. (5) It was not necessary for the petition to aver that the plaintiff did not know of the defective appliances. Crane v. Railroad, 87 Mo. 588; Flynn v. Railroad, 78 Mo. 195; Johnson v. Railroad, 96 Mo. 340; Young v. Shickle, etc., Co., 103 Mo. 324.

VALLIANT, J.—This is an appeal from a judgment in favor of the plaintiff for $5,000, as damages, for injuries sustained by him in a collision of cars on defendant's street railroad.

At the date of the accident, March 7, 1901, the defendant was operating certain street railroads in St. Louis, one line of which was in Olive street running east and west, and another in Sixth street running north and south. At that date the Olive street line was operated by cable, the Sixth street line by electricity. Plaintiff was an employee of defendant in the capacity of gripman on the Olive street line.

The petition alleges that as the train on which the plaintiff was operating as gripman, going west on Olive street, approached the crossing of defendant's tracks in Sixth street, there was a car of defendant in Sixth street headed south approaching the same crossing; that by the rules of the defendant company the Olive street train had the right-of-way and it was the duty of the motorman on the Sixth street car to give way and let the Olive street cars pass, but, disregarding that duty, he ran his car aiming to pass the crossing in the face of the approaching Olive street train, with the result that the cars came into collision. For specifications of acts of negligence on the part of the defendant as master, as distinguished from the acts of the motorman on the Sixth street car, the petition alleges that the track was

muddy and slick, no sand had been put on it, the sand box on the grip car was out of order and plaintiff could not use it to throw sand on the rail; there was no flagman at the crossing; the brake on the grip car which was designed to operate on both the grip car and the trailer, was out of order, so that it could not be applied to the wheels of the trailer, of all which the defendant had notice; that the consequence of the defective brake was that the plaintiff was unable to stop his train on the slippery track in time to avoid the collision.

The answer was a general denial and a plea that if the alleged omissions were true they were known to the plaintiff before the accident and by using them with the knowledge he assumed the risk; also a plea that he was guilty of contributory negligence in not looking out for a car on Sixth street, and in not using the appliances for sanding the rail and stopping the car in time to have stopped the same and avoided the accident.

Reply, general denial.

The evidence for the plaintiff tended to show as follows:

The brake was in bad order and not effective for the purpose for which it was designed. The plaintiff's first trip on that day was in the afternoon, starting from the car shed at 3200 Olive street going west to King's Highway. On making his first stop going west he discovered that the brake was out of order. Returning, he went east from King's Highway in Olive to Fourth street, which was the eastern terminus of the road. At Fourth street the cars had to be uncoupled to allow the grip car to be switched back to take its place in front of the trailer to go west again. At that point there was a man stationed whose main work was to couple the cars, but gripman were required to report to this man any defect in the cars, and he was authorized to order the car turned in and another car brought out in its place. This man's name was Gold. When the plaintiff reached Fourth street on his first trip he reported to Mr. Gold that

this brake was in bad order, and requested that the car
be turned in.  Gold examined the brake, tightened it,
and told the plaintiff he thought he could get along with
it, that other men had done so and he could; he also said
that the sand car would be along and sand the track.
Plaintiff then started back on another trip west; when he
reached the power house on Olive street, he there saw
Mr. Richardson, who was the foreman of the car shed
and who had authority to order the car turned in.   He
told Mr. Richardson that the brake would not work and
that it was a hard matter to get along with it; Mr. Rich-
ardson told him that others had got along with it and he
could; that he should use it until the rush was over.
Plaintiff then went on to the end of his trip west to
King's Highway and then returned as before to Fourth
street.   On his second trip west from Fourth street as
he approached Sixth street, within about thirty-five feet
of the crossing he slowed down, and then he saw a car
on Sixth street coming south and about sixty feet from
the crossing; he noticed that the motorman of that car
had also slowed down, and, thinking that the motorman
had done so to let the Olive street train pass, as it had
the right-of-way, the plaintiff "eased up" on his brakes
and made for the crossing, but just as he did so the
motorman with his face turned towards the west turned
on his full power and rushed his car at high speed in
front of plaintiff's train; plaintiff immediately applied
his brake as best he could, but the brake would not work,
and the train passed along the slippery track and struck
the Sixth street car at its front gate.   At the rate the
plaintiff's train was going he could have easily stopped
it before reaching the other car if the brake had been in
normal condition.   The evidence also showed that the
track was muddy and slippery, and the plaintiff, in the
emergency, endeavored to apply sand to the rail but
the sand box would not work.

   The plaintiff in the collision received severe in-
juries.  He was 46 years old and had been in the employ

of defendant about nine months, was earning $60 to $63 a month, had never worked for wages before, had been in business on his own account before he came to St. Louis. Over defendant's objection he was permitted to testify in relation to his earning capacity in former years. He said that he had been chiefly engaged in buying and selling live stock from Wisconsin and Dakota to Chicago; sometimes he lost money, and sometimes he made $2,000, $3,000, or $4,000 a year.

At the close of plaintiff's evidence, and again at the close of all the evidence, defendant asked an instruction to the effect that the plaintiff was not entitled to recover, which the court refused and defendant excepted.

The testimony on the part of the defendant tended to show that the brake in the car was in good condition; the gripman who usually ran it and had run it on that day up to the time the plaintiff took hold of it, testified that it worked well, and was in good order. Mr. Richardson denied that the plaintiff reported the car to him as out of order, and there was other evidence tending to corroborate his testimony.

The main instruction given for the plaintiff was to the effect that if the jury should find from the evidence that the brake was in bad order and would not do the work for which it was designed, "and if you further believe and find from the evidence that defendant's starter, Gold, or its foreman, Richardson, knew of said condition of said brake; if you believe and find from the evidence it was in said condition at said time, a sufficient length of time before said collision to have repaired the same, or have had said car turned in, and that they failed to do so; and if you further believe and find from the evidence that said condition of said brake was the cause of the collision; or if you believe and find from the evidence that the employees of defendant in charge of and operating said Sixth street car did not exercise ordinary care in operating the same at the time

of the collision, and such failure to exercise ordinary care, and the said defective condition of said brake, if you believe from the evidence it was at said time in a defective condition, combined and jointly, were the cause of the collision; and if you further find from the evidence that at said time the plaintiff was exercising reasonable and ordinary care as a gripman on the said car on which he was working, then you will find a verdict for the plaintiff."

There were a number of other instructions given of which there is no complaint.

The court refused two instructions asked by defendant, and the refusal of them is assigned for error. They will be referred to hereinafter.

I. The first point presented by appellant is that the petition does not state a cause of action, since it fails to state that the defects in the appliances complained of were not known to the plaintiff.

In a suit of this kind by á servant against his master it is not necessary for the servant to allege in his petition that the defective condition of the appliances which it is alleged caused the injury were not known to the plaintiff. [Crane v. Railroad, 87 Mo. 588; Young v. Iron Co., 103 Mo. 324.] It is not essential to the plaintiff's right of recovery that he should have been ignorant of the defect; it is only in case the danger from the defective appliance is so obvious as to render the servant's act in using it contributory negligence that it becomes a bar to his recovery. [Pauck v. St. Louis Beef & Prov. Co., 159 Mo. 467.]

II. The admission of the evidence as to the kind of business the plaintiff had been engaged in before his employment by defendant and the amount of his earning in such business is assigned for error.

Where the testimony, as in this case, tends to show that a man is permanently injured and his capacity for earning a living is impaired, it is proper for the jury to

know something of his ability in that respect as shown by his previous work. The testimony complained of was rather vague in its character and weak in its effect. The verdict as to the amount of the damages assessed by the jury is well sustained by the evidence and appellant in its brief does not contend that it is excessive. We find no reversible error in the admission of that evidence.

III. Appellant contends that the demurrer to the evidence should have been sustained.

The argument on this point rests mainly on the fact that the plaintiff knew that the brake was in a bad condition.

We have already said that mere knowledge that the brake was defective will not preclude the plaintiff's recovery. If the condition of the brake was such that the plaintiff might reasonably suppose that he could safely use it by taking due care, he was not to blame for continuing its use. The servant is also, when in doubt, justified in paying some deference to what his master or his master's representative tells him about it. In this case the testimony shows that Mr. Gold and Mr. Richardson both assured him that he could use it, that it had been used with safety by the other gripmen. Mr. Gold also told him that the sand car would come along and sand the track. With these assurances his act in using the appliance was not so obviously dangerous as to authorize the court to pronounce his conduct negligence as a matter of law. Besides these assurances, the testimony of the defendant tended to prove that the brake was not in a bad condition at all. Whether it was in a good or a bad condition was, to some extent at least, a matter of opinion. The jury had a right to credit the other gripman, who testified that it was in a good condition, with honesty in the expression of his opinion, yet believe that he was mistaken in that opinion, and yet conclude that his testimony was sufficient to show that

reasonable and honest men might differ about the matter.

Knowledge that the brake was defective certainly did impose on the plaintiff the duty of observing increased care in its use, but the evidence shows that he did everything possible that could be expected of a careful man in his situation.

It is said that the plaintiff saw that the motorman was looking to the west, paying no attention to the plaintiff's train coming from the east, and the plaintiff was, therefore, negligent in moving forward. The testimony was that the motorman turned his face to the west and in the same instant applied the power, and the plaintiff immediately brought all the appliances within his reach into action to stop the train, but could not do so.

There was no error in overruling the demurrer to the evidence.

IV.   There are several objections urged to the first instruction.

a.   It is first complained that the instruction assumes that Gold was a vice principal and charges the defendant with notice of what Gold knew in regard to the defective condition of the brake. Perhaps the instruction does assume a fact that depends only on evidence introduced by the plaintiff and should have been left to the jury to find. But that was the testimony of Mr. Gold himself and the defendant made no effort to contradict it.   He said that whilst his main work was to uncouple and couple the cars at the Fourth street terminus, yet he also had authority to order a car turned in when it was out of order and another car brought out in its place and that a telephone was furnished him for that purpose. Strictly speaking it ought to have been left to the jury to say whether he had that authority and if there was anything in the case to cast any doubt on that fact we would be justified in reversing the judgment for that error. But Mr. Richardson, the foreman

of the car shed, and Mr. Davidson, the assistant general superintendent, were on the stand as witnesses, and neither of them denied the statement of Mr. Gold in that particular. The error does not affect the merits of the case.

b. The next criticism of the instruction is that it defines the duty of the plaintiff to have been to exercise "reasonable and ordinary care as a gripman on said car." The argument is that since the defendant was a common carrier of passengers and its duty was to exercise a very high degree of care for the protection of its passengers, the plaintiff being employed by defendant in the work of carrying passengers, he impliedly contracted to exercise in the doing of that work that degree of care that the law imposed on the carrier, and that, therefore, it was error to say that he was, in this case, required to exercise only ordinary care. The proposition is not without reason, although there are no authorities cited to sustain it. If the servant's failure to exercise the high degree of care which his master owed to a passenger should result in injury to a passenger and the master should be required to pay damages therefor, then, in a suit by the master against the servant for failure to do his duty, the point now made by appellant would seem unanswerable. But where it is the servant only who is injured and the suit is between him and his master, the rule has usually been to measure the duty of each to the other by the standard of ordinary care. The ingenious argument of the learned counsel leads to this thought, that is, if we should say that the duty of a servant of a carrier of passengers, in the dangerous position of gripman or locomotive engineer, was to exercise for his own safety the highest degree of care practicable among experienced and careful men in that business, a case might arise in which there would be a conflict between the duty the servant owed himself in the face of danger and that he owed the passengers under his care. There are instances within the com-

mon experience of mankind in which brave men in such positions have put the safety of those in their care above their own safety and we are not prepared now to lay down a rule of law that would condemn them.

But that is an abstract proposition in this case, because, whatever may have been the degree of care this plaintiff ought to have exercised, the evidence shows that he did not fail to reach the highest degree.

c. The next criticism is that the instruction ignores the plea that the plaintiff "assumed the risk." The servant assumes the risk of the danger incident to the employment, but he never assumes the risk of the master's negligence. If his master furnishes him unsafe implements and he uses them, knowing them to be unsafe, a question of contributory negligence arises, but not of assumption of the risk. [Pauck v. Beef Co., supra; Curtis v. McNair, 173 Mo. 270; Parks v. Railroad, 178 Mo. 108.]

d. The instruction authorizes a verdict for the plaintiff. if the jury find that the cause of the injury was the result of the combined negligence of a fellow-servant and that of the master.

There is no error in that feature of the instruction.

The suit is bottomed on the negligence of the master and the instruction in the particular now under discussion is only in effect saying that if the master was negligent, it is no excuse that the negligence of a fellow-servant of the plaintiff contributed with that of the master to cause the injury. [Deweese v. Mining Co., 54 Mo. App. 476, s. c., 128 Mo. 423; Young v. Iron Co., 103 Mo. 324; Browning v. Railroad, 124 Mo. 55.]

There is no error in the first instruction.

V. One of the instructions asked by defendant and refused was based on a theory which we have already discussed; it was in effect that, whereas the law imposes on the carrier a very high degree of care for the protection of the passenger, the contract of employment

between the carrier and the servant engaged in the work implies that he will exercise the same high degree of care for his own safety. From what we have already said on that subject it follows that the refusal of that instruction was not error.

The other refused instruction was to the effect that though the car and track were defective, yet, if the plaintiff knew it he can not recover "unless you find that the defendant promised to repair the same and the plaintiff continued to use the same in reliance upon such promise, and before the expiration of a reasonable time after such promise was made (if there was such promise) the plaintiff was injured on account of such defects." There was no such issue as that presented by the evidence in the case and it would have been error to have given that instruction. There was no promise to repair and hence no reliance on such promise. What the plaintiff did rely on was the assurance of Mr. Gold and Mr. Richardson that the car could be used with safety as demonstrated by the fact that others had used it.

The rest of that instruction which is to the effect that, the plaintiff knowing the defects, it was his duty to be mindful of them and exercise the care that the condition required, was amply covered in other instructions given.

We find no error in the record. The judgment is affirmed.

All concur.