Dorothea ANDERSON, Respondent,

v.

James K. BELL and Monroe Johnson, Appellants.

No. 45700.

Supreme Court of Missouri, Division No. 1.

June 10, 1957.

Carter & Fitzsimmons, Paul E. Fitzsimmons, Clayton, Holtkamp, Miller & Risch, St. Louis, for appellants.

Morris A. Shenker, John E. Bardgett, Sidney M. Glazer, St. Louis, for respondent.

COIL, Commissioner.

The jury awarded Dorothea Anderson $17,000 against both appellants (herein called defendants) Johnson and Bell as damages for personal injuries sustained by her when the southbound automobile operated by Johnson in which she was a rear-seat passenger collided head on with a northbound automobile being operated by defendant Bell. Johnson's cross claim against Bell was submitted but the jury was unable to reach a verdict thereon and a mistrial was declared and a separate trial thereof ordered. Both Bell and Johnson have appealed from the judgment entered on respondent's verdict and each initially contends that the trial court erred in failing to direct a verdict for him.

The collision occurred in St. Louis at 10 p. m. on September 30, 1955, about 60 feet north of the place where Humboldt Street intersects north-south Broadway and on Broadway's center line. Respondent (hereinafter called plaintiff) adduced both defendants as her witnesses. Each defendant's testimony considered as a whole tended to make the other's negligence the sole, or at least a concurring, cause of the collision. Defendant Bell's theory was that as he proceeded northwardly on Broadway from a stopped position on the south side of Humboldt at 25–30 miles per hour and with the left side of his automobile two feet to the right (east) of Broadway's center line, Johnson's automobile suddenly swerved from behind another automobile proceeding south in the innermost southbound traffic lane into the northbound (east) traffic lane in such close proximity to the front of Bell's automobile as to make it impossible for Bell to avoid the collision by any action he could have taken.

Johnson's theory was that Bell's automobile, as it left its stopped position at the south side of Humboldt, proceeded northwest instead of directly north, and thus inevitably into the southbound traffic lane in which Johnson's automobile was traveling and ran head on into Johnson's automobile as it proceeded south.

 Plaintiff testified that she was a rear-seat passenger in Johnson's automobile and had no knowledge whatever bearing upon the circumstances of, or the cause of, the collision. Consequently, she gave no testimony which the testimony of any of her witnesses could contradict and she was not bound by the testimony of any of her

witnesses in so far as that testimony was contradicted by her other evidence. Further, the jury could "believe all of the testimony of any witness or none of it, or * * * accept it in part and reject it in part; just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case." Burr v. Singh, 362 Mo. 692, 696 [1], 243 S.W.2d 295, 298 [4, 5].

■ When the evidence is considered favorably to plaintiff in the light of the rule last above-stated, a jury reasonably could have found the facts as they are here stated. When defendants' respective automobiles were at least 300 feet apart, one traveling north and the other south, each with its headlights burning, each proceeding at 25–30 m. p. h. and under circumstances wherein each driver had a clear and unobstructed view of the other's automobile, those automobiles proceeded north and south respectively directly toward each other, at the same constant speeds, with the left side of each about two feet or more on the wrong side of the street and into head-on collision. Neither defendant sounded a warning and swerved, although each had time and opportunity to have done so and, by so doing, could have avoided the collision.

■ It is apparent from our statement above that we are of the view that plaintiff made a submissible case against each defendant. We note, however, each defendant's specific contention as to submissibility. Bell contends that his version of the accident was consistent with the physical facts and common sense and was corroborated by the testimony of a police officer who arrived immediately after the collision and found both automobiles on the east (Bell's) side of Broadway's center line. The policeman's diagram, however, from which he sought to disclose the position of the automobiles at the time of impact pictured the collision as occurring on the center line of Broadway, and the photographs in evidence indicated that, and Bell testified that, Johnson's car was proceeding directly south at the time of the impact. Be that as it may, however, Bell contends that, as contrasted with his sensible and corroborated version, Johnson's testimony was so vague and indefinite as to not constitute substantial evidence but was such as to leave plaintiff's case against Bell in the realm of conjecture and supposition. Bell tacitly concedes, it seems, that if Johnson's testimony constituted substantial evidence plaintiff made a submissible case against Bell. We have examined the testimony of Johnson and, while we agree that there are some contradictions and inconsistencies in it, we are of the opinion that those were for the jury in determining the weight of that testimony and that they did not destroy its probative effect.

Johnson's specific contention as to submissibility seems to be that, inasmuch as certain isolated answers of defendant Bell indicated that he drove northwest from his stopped position as he proceeded on Broadway, and thus, if so, onto the west side of the street which was then occupied by Johnson, Bell caused the collision. Obviously, however, that contention overlooks the fact that even if the evidence conclusively established that Bell so drove, such would do no more than to convict Bell of concurring negligence and would not eliminate Johnson's negligence as a contributing cause of the collision.

Bell and Johnson next contend that plaintiff's verdict-directing instructions 3 and 4, respectively, were erroneous. Instructions 3 and 4 were substantially identical—instruction 3 authorized a verdict against Bell and 4 a verdict against Johnson. For present purposes, we shall refer to "the instruction" as including both instructions 3 and 4 and refer to "defendant" as including both Bell and Johnson. The instruction in effect submitted the failure of defendant to keep a lookout when, by so doing and by warning and swerving, he would have avoided the collision. The instruction (3 as illustrative of both) was: "The Court instructs the jury that if you find from the credible evidence that at the time and place men-

tioned in the evidence, defendant Bell was operating an automobile northwardly on Broadway, and if you find that at said time and place defendant Johnson was operating an automobile southwardly on Broadway, and that the two automobiles were approaching each other, and that plaintiff was a passenger in defendant Johnson's automobile and exercising ordinary care for her own safety, and if you find that the said two automobiles collided at or near the center of Broadway and about sixty (60) feet north of Humboldt Street, and that plaintiff was caused to be injured thereby, and if you find that defendant Bell failed to keep a careful and continuous lookout ahead and laterally for other vehicles in motion on Broadway, and in particular the automobile in which plaintiff was a passenger, and that such failure, if any, was negligence, and if you find that defendant Bell, in the exercise of the highest degree of care could have seen the automobile in which plaintiff was a passenger being driven southwardly on Broadway, and could have known that there was a probable danger of collision between the two automobiles, in time thereafter, under the circumstances then and there existing, to have avoided the collision and injury to plaintiff, if any, by sounding an effective warning of the approach, proximity and movement of defendant Bell's automobile, and by swerving the same to the right, but that defendant Bell failed so to do, if you so find, and if you find that such failure, if any, was negligence and that such negligence, if any, directly caused said collision and plaintiff's injuries, if any, then you are instructed that plaintiff is entitled to recover against defendant Bell and your verdict must be in favor of plaintiff Dorothea Anderson and against defendant James Bell on the plaintiff's cause of action."

Both defendants contend that the instruction was not supported by the evidence and that it failed to hypothesize essential facts which must have been found by the jury to authorize a plaintiff's verdict. What we have said heretofore with respect to the question of submissibility has effectively disposed of the contention that the instruction was not supported by the evidence.

Bell expresses the contention that the instruction fails to hypothesize essential facts by stating that it did not refer to the "real factual issues" and that therefore the instant instruction falls within the rule stated in Hooper v. Conrad, 364 Mo. 176, 260 S.W. 2d 496, as applicable to cases presenting two or more divergent sets of essential facts. And, in that connection, Bell points out that the instant instruction failed to refer to the position in the street of defendant Johnson's car, to whether Johnson passed a car ahead of him, to where Johnson was when Bell should have seen him, and to whether Johnson turned suddenly or gradually from behind the car he was following. Bell concludes that the jury was given a roving commission to find him negligent, if the jury found that he failed to keep a lookout, but without furnishing a guide to the jury or a standard upon which to base Bell's duty to act. Those same contentions are, in effect, made by Johnson.

That there is no merit in those contentions is demonstrated by the language of the instruction set forth above. The essential facts from plaintiff's standpoint were sufficiently hypothesized. True, there were certain evidentiary facts shown by the evidence and not hypothesized by plaintiff. Those were facts which Bell or Johnson, or both, might have wished to have hypothesized in an instruction or instructions and which, if found by the jury, might have exonerated one or the other or both from negligence. Such facts, however, were not essential facts to be found to authorize a verdict for plaintiff. Plaintiff hypothesized that the cars were traveling north and south respectively toward each other, that they collided near the center of Broadway about 60 feet north of Humboldt, that defendants negligently failed to keep lookouts when, by so doing, they could have seen each other in time to have swerved and warned but that

they negligently failed to do so. The instruction then required a finding of causation and injury. It is clear to us that the instruction hypothesized the essential facts sufficiently to support plaintiff's recovery and that the jury would have understood what facts it needed to find in order to entitle plaintiff to a verdict. Knight v. Richey, 363 Mo. 293, 303, 250 S.W.2d 972, 978. And contrary to defendant's contention a standard of care, the highest degree of care, was required as the yardstick by which the jury was to judge defendant's actions.

■ Johnson, in addition to the joint complaints noted, contends that the instruction failed to hypothesize a causal connection between "failure to keep a lookout" and plaintiff's injury. We agree that the instruction does not make it clear whether "such negligence" as directly caused the collision referred only to the hypothesized finding that the defendant failed to warn and swerve when he could and should have done so in time to have avoided the accident, or whether "such negligence" also referred to and included the negligence which was hypothesized and of which the jury also found Johnson guilty, viz., failing to keep a lookout ahead and laterally. Inasmuch as the jury found Johnson negligent in both respects and inasmuch as a finding of negligence in either respect was sufficient as a proximate cause (Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10, 14 [4, 5]; Horrell v. St. Louis Public Service Co., Mo., 277 S.W.2d 612, 615 [4, 5], and inasmuch as the jury found that the negligence of defendant in at least one of the hypothesized respects was the proximate cause, there is no merit in the contention.

■ The instruction required the jury to find that defendant, in the exercise of the highest degree of care, "could have known that there was probable danger of collision between the two automobiles, in time thereafter," etc. Johnson says that the foregoing language required him to act on the appearance of probable danger and thereby imposed a duty equal to or greater than that imposed by a "vigilant watch" ordinance. Be that as it may, the fact is that "probable danger" of collision meant that a collision was likely. (Probable and likely are synonyms, Webster's New International Dictionary, 2d Ed.) Certainly each defendant had a duty to act to avoid a collision when he knew, or, in the exercise of the highest degree of care, should have known, that a collision was likely if he pursued the course he was then on, and clearly a jury reasonably could find that a violation of that duty was negligence.

Both defendants contend that the trial court erred in giving instruction 14. The case was submitted and the jury deliberated for about two hours on April 4, 1956. On April 5, 1956, at 12:05 p. m., the jury was in the courtroom and the following occurred:

"The Court: * * * [addressing the jury foreman] * * * As I understand, the jury was out yesterday afternoon deliberating on this case approximately two hours?

"The Foreman: That is correct.

"The Court: And it is now a few minutes after twelve, and you have been out since 10 o'clock this morning. Does it appear that there may be a possibility of the jury agreeing upon a verdict in this case?

"The Foreman: It would be hard to say, Your Honor. It does appear as though there might be a possibility, but that would be difficult to say.

"The Court: Now, I want to ask you a question for the record, and because of the nature of the question, I want to tell you the kind of an answer I want, so there will be no misunderstanding about it, or be nothing said in the record that shouldn't be said. I want you to tell me, if you can, at this time how the jury stands, that is whether they are standing eleven to one, ten to two, nine to three, eight to four, seven to five, or six to six, give me only the

figures without telling me which way the jury leans.

"The Foreman: I understand the jury stands at eight to four, Your Honor.

"The Court: I will tell you what I am going to do, I will give you another instruction at this time, which will be Instruction No. 14, which may be of some help to the jury. After I read this instruction, I will excuse you until 1:30, which will give you ample time to get a bite to eat, and you can come back and deliberate for some time after lunch. * * *

" 'At this time, after you have been deliberating, I give you this additional instruction. It is desirable that there be a verdict in every case. It costs considerable money and time and effort to try any lawsuit and the parties are entitled to have their rights determined once and for all in every case, and the 12 jurors chosen to try this case should be as well qualified to do so as any other 12 that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue, yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict.' "

At 2:45 p. m. on the same day the jury was again in the courtroom and the following occurred:

"The Court: Has the jury arrived at a verdict?

"The Foreman: Your Honor, the jury has failed to arrive at a verdict at this time, and they are wondering if it is in order to consult with the Judge on a certain instruction to the jury.

"The Court: Well, I can tell you the answer to that is the Court is not allowed to comment upon the instructions or what their meaning is, that happens to be the law, that seals my lips about that matter. Now, while you are here, let me ask you this, do you think it is possible for the jury to be able to agree either upon a verdict in the plaintiff's case or on a verdict in the cross claim? They are two separate suits to be tried in this case. If the jury cannot agree upon both of them, they may be able to agree upon a verdict in either one of them, in which event they could return any verdict they agree upon, either upon the principle case or upon the cross claim. Do you think it is possible for the jury to agree upon any verdict on both or upon either?

"The Foreman: This would be a personal opinion, your Honor, but I think that further deliberation might be in order, that the jury may be able to arrive at a verdict on one of the two claims.

"The Court: All right. The jury may return to their room and see what you can do about it, and I will be very available here, and wait for whatever decision you arrive at. You may take the jury back."

Thereafter, at an undisclosed later time that day, the jury returned a 9-man verdict for plaintiff on plaintiff's cause of action and against both defendants, and reported that it was unable to agree as to Johnson's cross claim against Bell and a mistrial as to the cross claim was declared.

An instruction in all material respects identical with instruction 14 given in the instant case was approved in State v. Roberts, Mo., 272 S.W.2d 190, where, at page 192, the court said: "Admonitions of the character as used by the trial court set forth supra have been held to be proper in many cases." In State v. Baker, Mo., 293 S.W.2d

900, inquiring of a jury prior to verdict how the jury stood numerically, then inquiring whether the jurors thought there was a chance of arriving at a verdict, and then ordering the jury returned to their jury room for further deliberations, was approved as not coercive under the circumstances of that case. This court held, however, in the Baker case, supra, that the real question was always whether there was in fact any coercion of the jury in connection with such an inquiry. It was said that such an inquiry was "not coercive per se but that it must be determined from the record of what is said and done at the time whether or not there is any indication of coercion." 293 S.W.2d 905. And, to demonstrate the lack of coercion in the Baker case, this court there said, "there was no direction to the jury (as in some of the federal cases) about the desirability of reaching a verdict or urging them to do so." 293 S.W.2d 906.

In our view, the effect of the holding in State v. Roberts, supra, approving an instruction like instant instruction 14 must be considered in the light of the particular facts and circumstances of that case and in the light of the court's language in the later case of State v. Baker, supra. We are of the view that State v. Roberts, supra, should not be considered as authority to trial courts to give instruction 14 or any instruction on the same subject indiscriminately or under any and all circumstances. On the contrary, instruction 14 may, under the circumstances of a given case, indicate that a verdict was the result of coercion. State v. Baker, supra. Particularly might that be true where, as in the instant case, the instruction was accompanied by and followed by a series of jury inquiries under the circumstances that the jury had remained and was remaining in disagreement for an unusually long time. We think the rule stated in State v. Baker should apply equally to the question of the propriety of giving an instruction like 14 in the instant case, viz., whether it is indicated in the particular case that coercion in fact occurred. It is settled and it is apparent that a jury

verdict produced by a court's coercion is invalid. We are of the opinion, therefore, that instructions like or similar to instruction 14 in the instant case should be given only on those infrequent occasions when it is reasonably certain that no coercion will be thereby exercised.

It is clear, however, that we should not hold the giving of instruction 14 constituted reversible error in the instant case. That is because the jury, by returning a verdict on plaintiff's cause of action and at the same time reporting its inability to agree as to Johnson's cross claim against Bell, demonstrated the probability that the jury was not in fact coerced by instruction 14. (We observe in connection with the question of the propriety of giving instruction 14, that the trial court properly struck the affidavit of a juror which attempted to impeach his verdict and which was attached to defendant Bell's new-trial motion. Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 595 [26, 27]; Songer v. Brittain, Mo.App., 272 S.W.2d 16, 22 [14].)

Defendant Johnson contends that the trial court erred in admitting in evidence over his objection three photographs of plaintiff, one taken prior to the accident, one while plaintiff was in the hospital shortly after the accident, and one after plaintiff's facial lacerations had healed. We need not determine whether the trial court abused its discretion in admitting any of those photographs for the reason that neither defendant here relies on the point that the verdict was excessive. The photographs, under the facts of the instant case, could have affected the issue of damages only, and any error in their admission was harmless. Cf. Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 877 [5], 254 S.W.2d 577, 584 [7, 8].

Defendant Bell contends that the trial court erred in submitting Johnson's cross claim under a humanitarian instruction because, Bell says, the evidence failed to establish his humanitarian liability. As

we have heretofore noted, the jury failed to agree on Johnson's cross claim, a mistrial was declared, and a separate trial thereof ordered. Johnson's claim against Bell was the subject of an independent action as well as the subject of a permissive cross claim. Section 509.460 RSMo 1949, V.A.M.S. After the trial court's order for a separate trial thereof, Johnson's pending cross claim had the status of an independent action to the same extent as though Johnson had filed a separate suit against Bell. Snyder v. Jensen, Mo., 281 S.W.2d 819, 822 [3, 4]. It must follow that no question pertaining to the cross claim is involved in or should be considered on this appeal.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.