Ruby MILLER and James Miller,
Plaintiffs-Respondents,

v.

Jerry L. HAYNES, Defendant-Appellant.

No. 33494.

St. Louis Court of Appeals,
Missouri.

March 24, 1970.

Motion for Rehearing or to Transfer
to the Supreme Court Denied
May 13, 1970.

Rader & Grimm, Bradshaw Smith, Cape Girardeau, for defendant-appellant.

Oliver, Oliver & Jones, Cape Girardeau, for plaintiffs-respondents.

BRADY, Judge.

Action for personal injuries arising out of an automobile collision. Jury verdict was for Ruby Miller in the amount of $10,000.00 for her injuries and James Miller in the amount of $3,500.00 for past and future medical expenses, additional help in the home and on the farm, and past and future loss of his wife's companionship, services, society and consortium. Defendant raises three allegations of prejudicial error: (1) as to the admission of testimony of plaintiffs' medical expert, over objection, as to Mrs. Miller's possible fu-

ture medical treatment; (2) in allowing Mrs. Miller and her husband to testify over objection as to the number of their children, give their names and ages, and to identify some of them as present in the courtroom on the day of trial; and (3) refusal to allow inquiry by defendant's counsel as to whether Mrs. Miller was wearing a seat belt at the time the collision occurred.

The facts bearing on these issues, taken in the light required of us by the verdict for plaintiffs, are that the accident furnishing the basis for this action occurred in the State of Illinois where plaintiffs were residents. Defendant is a resident of Missouri. As Mrs. Miller was proceeding toward her home from a shopping trip she noticed a woman standing in the road waving at her to stop and also noticed that an automobile was off of the road near where this woman was standing. Upon stopping the 1966 automobile belonging to the plaintiffs, Mrs. Miller discovered this woman, later identified as a Mrs. Clark, was injured. She drove Mrs. Clark to a farm house, a distance of about a city block, where they made some telephone calls to get assistance. She then put Mrs. Clark in her automobile and started to bring her into town for medical assistance. As she neared the spot where she had picked up Mrs. Clark she noticed a car coming around a curve and down a hill immediately ahead of her. This was the defendant who, when Mrs. Miller first saw him, was then in the center of the highway. She immediately began applying her brakes and driving over toward the righthand side of the road. Prior to the time the impact occurred she was completely stopped and off the road as far as she could get her automobile without it falling down the ditch Mrs. Clark's automobile had descended. Defendant testified that as he approached the scene he noticed the Clark car in the ditch and was looking at it, and when he looked back at the road he saw Mrs. Miller's automobile right in front of him. She had been stopped for a short period of time and she had had time to brace herself before the impact occurred.

Taking the view the law of Illinois governed the necessity for and form of the allegations of their petition plaintiffs alleged therein that neither the collision nor Mrs. Miller's injuries were caused or contributed to by her negligence. Defendant's answer was a general denial and also set up the defense that the accident and Mrs. Miller's injuries were caused by her contributory negligence. Plaintiffs filed a motion for a more definite statement seeking to have defendant allege the specific acts or omissions to act which he claimed constituted Mrs. Miller's contributory negligence. The motion was sustained and defendant amended its answer setting out numerous allegations of alleged careless and negligent conduct by Mrs. Miller. That pertinent to this appeal is that it was alleged she "* * * carelessly and negligently failed to wear her seat belt." This amendment was accomplished in chambers on the day of and immediately prior to trial. Plaintiffs' counsel then moved the amended answer as to Mrs. Miller's contributory negligence in failing to wear her seat belt be stricken and defendant's counsel be instructed not to mention it or argue it. After hearing argument on the matter the trial court sustained plaintiffs' counsel's motion.

At that time and thereafter during the course of the trial defendant made numerous requests of the trial court for permission to inquire of various witnesses concerning seat belts in the plaintiffs' car, whether or not they were being used on this occasion, and their effect on this accident. The trial court denied all such requests. As a result of such denials defendant made the following offers of proof which the trial court refused: that Mrs. Miller did not have her seat belt engaged at the time of this accident; that the automobile she was driving was equipped with seat belts; and that the Illinois state patrolman who investigated the accident "had training concerning the use of seat belts

and that their use does minimize injuries; that the State Patrol recommends their use and that he is cognizant of the fact that the United States Congress has recommended their use as a safety feature." Defendant also made an offer of proof that if permitted to do so the treating physician would testify Mrs. Miller's injury would have been less serious had she been wearing seat belts.

Neither in the original answer nor in the amendment made in chambers the day of trial did defendant raise any issue as to mitigation of damages. Defendant does not raise any allegation of error on this appeal as to the trial court's action with regard to striking from his answer the reference to Mrs. Miller's failure to use her seat belt.

Mrs. Miller's major injury was a posterior superior dislocation of the hip joint with a fracture of the posterior rim of the socket or acetabulum of the pelvis. The testimony was her injuries were permanent. Mr. Miller testified to special damages totalling $2,409.42. It is unnecessary to burden this opinion with detailed facts bearing upon defendant's allegation of error as to the admission of testimony by plaintiffs' medical expert, over objection, as to the necessity for, description, and cost of possible future surgical procedures for Mrs. Miller. It is sufficient to state the medical expert testified certain conditions sometimes develop from injuries to the hip joint such as sustained by Mrs. Miller and that he could not tell at the time of trial whether or not such condition might exist in the future. He was then allowed to relate "other surgical operative" procedures "possibly necessary" in the event such a condition did develop. He testified these could include some four weeks of hospitalization and two or three years of postoperative visits accompanied by physiotherapy. He gave his estimate as to the surgical fees for the operation as being approximately $500.00 to $600.00 and the hospital rate at approximately $33.00 per day for the four-week stay. His testimony was that he did not expect or anticipate this condition to develop in Mrs. Miller's hip and that there was nothing in existence at the time of trial indicating future development of a condition requiring such procedures and treatment.

Over objection that evidence relating to the number of plaintiffs' children, their names or ages was immaterial, irrelevant and introduced only for the purpose of invoking prejudice and sympathy, Mr. Miller was allowed to testify they had four children and to give their names and ages. Later during the trial Mrs. Miller was asked if they had four children and answered they had four and that three of these were in the audience in the courtroom.

With respect to defendant's first allegation of prejudicial error it is clear plaintiffs' medical expert was allowed to testify as to a condition which could but which he did not then know would develop, which he did not expect or anticipate occurring, and of which he could then, some two years and eight months after the accident, see no evidence. Such testimony is markedly distinguishable from that involved in the line of cases represented by Stephens v. Guffey, Mo., 409 S.W.2d 62. There the testimony was admissible because it was related to a condition which in the positive view of the doctor was suggested to be or could be a condition from which Mrs. Miller was suffering as a result of the accident. In this case it was purely speculative and was improperly admitted. Hahn v. McDowell, Mo.App., 349 S.W.2d 479.

We also hold that, under the facts and circumstances of this case, it was error to permit the plaintiffs to testify as to the number of their children, give their names and ages, and comment upon the presence of three in the courtroom. With regard to the comment three of the children were present in the courtroom the transcript discloses the question asked was: "And you all have four children? A.

Four children, three—(interrupted)" When the interruption was completed the testimony given was that three of the children were in the courtroom. The comment regarding their presence was not responsive to the question and was clearly objectionable, subject to a motion to strike and to have the jury disregard the answer. In passing upon the other testimony regarding the number and names and ages of the children, defendant relies upon Donze v. Swofford, Mo.App., 368 S.W.2d 917, and cases of a similar nature. That line of cases is not controlling upon the issue presented here. Under the circumstances of Donze, supra, the question and the answers given bore no possible relation to the issues in the case and were injected solely to arouse sympathy. That is not true in the instant appeal. Here the wife was injured and in a separate count the husband alleged he had had to employ additional help in the home and on the farm. It is quite possible that the names would indicate the sex of the children which would have some bearing upon their ability to help around the house or farm, as would their ages. The difficulty is that we can find no indication in the transcript that this matter was developed any further. That is to say, there was no evidence given as to just what the situation was with regard to the children helping around the farm and house, or as to how this help or the lack of it would affect Mr. Miller's damage. We believe this evidence would have been permissible had it been connected in some way to the issue of Mr. Miller's damage. It was not.

To hold that the trial court's actions as to either of these two contentions constitute error does not dispose of the matter nor require reversal. Plaintiffs contend that even if the trial court did commit error in its rulings as to these two points, such error cannot be prejudicial as this evidence goes only to the issue of damages and defendant has waived these errors by not advancing any contention the damages awarded were excessive.

There are cases which hold that incompetent evidence on a material issue is presumed prejudicial unless clearly shown to be otherwise and that the burden of so showing is on the one introducing the evidence. An example of such a line of cases is to be found in Schears v. Missouri Pac. R. Co., Mo., 355 S.W.2d 314, l.c. [2]318, and Union Elec. Co. v. Menkhaus, Mo. App., 370 S.W.2d 619, l.c. [4]622. Each case would then stand upon its own facts as to what circumstances are sufficient to overcome the presumption of prejudice. However, it would seem clear that, while it might be sufficient in some cases, defendant's failure to allege the verdict was excessive could not overcome the presumption in every case where the evidence goes to the measure of damages.

On the other hand plaintiffs rely upon the statement of this court in Rogers v. Spain, Mo.App., 388 S.W.2d 518, l.c. [3]521, to the effect testimony going only to the issue of damage is not prejudicial and does not require reversal where there is no contention the verdict was excessive. While it is true this court did make that statement in Rogers v. Spain, supra, it is also clear the statement constituted dictum for immediately preceding it we held that the evidence objected to was properly admitted. However, other examples of applications of this principle may be found collected in Mo.Digest, Appeal & Error, ⊕1052(5). This writer has grave doubt as to the validity of the rule that in the absence of an allegation of excessiveness, incompetent or improperly admitted evidence going to the measure of damage will be held harmless error. In Higgins v. Terminal R. Ass'n of St. Louis, 231 Mo.App. 837, 97 S.W.2d 892, this court held that any error in the giving of an instruction permitting recovery of damages for permanent injuries when there was allegedly no such evidence was harmless when defendant did not complain of the excessiveness of the verdict. In State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 165 S.W.2d 428, l.c. [6]432, the Supreme Court

held this to be an unsound rule. Thus it was in Anderson v. Glascock, Mo.App., 271 S.W.2d 243, l.c. 251, we ruled on its merits an allegation of error in an instruction relating solely to the measure of damages even though there was no contention the verdict was excessive. See also Svehla v. Taxi Owners Ass'n, Mo.App., 157 S.W.2d 225. In Zarisky v. Kansas City Public Service Co., 239 Mo.App. 396, 186 S.W.2d 854, it was held the opinion of an expert medical witness based upon hearsay evidence was incompetent. Plaintiff in Zarisky then raised the very contention raised by plaintiffs in the instant appeal asserting (l.c. [2]856): "* * * even if incompetent, the question and answer would affect only the amount of the verdict. Plaintiff contends that the defendant has waived the error by failing to have objected specifically to the excessiveness of the verdict." Citing Higgins and Shain, and having particular reference to the case of McEntee v. Kansas City Public Service Co., Mo.App., 159 S.W.2d 336, the court held the admission of the evidence was prejudicial. To the same effect see the dissent in Hertz v. McDowell, Mo.App., 203 S.W.2d 500, l.c. 508, transferred Hertz v. McDowell, 358 Mo. 383, 214 S.W.2d 546. The writer believes it illogical to hold reversible error the improper admission of evidence supporting an instruction upon damages without requiring an allegation the verdict is excessive and yet hold the improper admission of evidence going to the issue of damage constitutes harmless error unless such an allegation is advanced.

There are some early cases of the Supreme Court of this state often cited in support of the contention a claim of excessiveness is necessary else the improper admission of evidence going to the measure of damage constitutes harmless error. They do not so hold. In Courtney v. Blackwell, 150 Mo. 245, 51 S.W. 668, the court ruled the evidence objected to could not be prejudicial as no damage was allowed by the jury. In Cole v. St. Louis Transit Co., 183 Mo. 81, 81 S.W. 1138, l.c.

1140, the allegedly improperly admitted evidence was in fact properly admitted so there was no error. In McKenzie v. United Rys. Co., 216 Mo. 1, 115 S.W. 13, the court held the question of the admission of the allegedly improper evidence was harmless because the jury awarded the total compensation permitted by the statute.

So far as this writer has been able to discover there is only one case wherein the Supreme Court has squarely ruled this issue. In Anderson v. Bell, Mo., 303 S.W. 2d 93, l.c. [13]100, it was held that error in admitting over objection certain photographs of plaintiff, one taken prior to the accident, one taken while plaintiff was in the hospital shortly after the accident, and one taken after plaintiff's facial lacerations had healed, was harmless as there was no contention the verdict was excessive. In spite of the seeming contradiction between that ruling and the often repeated holding that incompetent evidence on a material issue is presumed prejudicial (Schears v. Missouri Pac. R. Co., supra; State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667[4]), we are constrained to follow Anderson v. Bell, supra, as it is the last square holding of our Supreme Court upon the point. Accordingly, we hold the trial court was in error in its ruling upon the medical expert's testimony and the questions and answers as to the names and ages of plaintiffs' children, but also rule that error was harmless due to the failure of the defendant to allege the verdict was excessive.

The remaining issue is plaintiffs' objections and defendant's offers of proof as to Mrs. Miller's failure to use her seat belt. At the outset it should be carefully kept in mind that defendant's contentions of alleged error as to this issue go purely and solely to the proof of the allegation of plaintiffs' petition, required by Illinois law, that she was in the exercise of due care for her own safety. The result is that the rule of Anderson v. Bell, supra, as to harmless error in the absence of an allega-

tion of excessiveness cannot apply as defendant's contentions do not go to the amount of damages.

■■ It is too well accepted to require citation that matters affecting the substantive rights of the parties must be governed by the law where the collision occurred; Illinois. Rhyne v. Thompson, Mo., 284 S. W.2d 553. Matters of procedure are governed by the law of the forum; Missouri. What is substantive and what is procedural is for the court of the forum to decide. Restatement of the Law, Conflict of Laws, § 584, and cases cited Missouri pocket supplement. At first blush it will seem the question here presented as to the seat belt issue is one of procedure only for it arose as a matter of the introduction of evidence. See Restatement of the Law, Conflict of Laws, §§ 595, 597; and Martinez v. Missouri Pac. R. Co., Mo., 327 S.W.2d 855, l.c. 859. More careful consideration leads inescapably to the conclusion the issue here presented is one involving the substantive rights of the parties. This for the reason the theory upon which the parties argued the admissibility of this evidence in the trial court, the theory upon which that court refused its admission, and the theories advanced by the parties upon this appeal were on the basis that, even if Mrs. Miller had failed to wear a seat belt, that evidence and that contained in the other offers of proof would not, as a matter of law, raise a jury issue whether she failed to use due care. It follows that the law of Illinois is controlling upon this issue.

Is there any valid Illinois case on the subject? There is no Illinois statute requiring the use of such devices and the only reported case upon the subject is ambiguous and due to later decisions, of doubtful validity. Mount v. McClellan, 91 Ill.App.2d 1, 234 N.E.2d 329, is the case

upon which defendant relies. There are at least two reasons we do not hold that case controlling.

The first is that, as recited in that opinion, " * * * the plaintiff was asked, on cross-examination, whether or not his car was equipped with seat belts. An objection to this question was overruled and the plaintiff answered that his car was not equipped with seat belts." Jury verdict was for plaintiff who asked for a new trial alleging inadequacy of the verdict [1] and error in allowing inquiries as to seat belts. The trial court sustained plaintiff's motion on both grounds. The appellate court reversed that decision. As to the seat belt issue the court in Mount relied upon and adopted Bentzler v. Braun, 1967, 34 Wis.2d 362, 149 N.W.2d 626, citing from the opinion in that case at l.c. 639: " * * * there is a duty, based on the common law standard of ordinary care, to use *available* seat belts independent of any statutory mandate." (Emphasis supplied.) The citation of that language together with the fact the question asked in Mount went to whether or not plaintiff's automobile was equipped with seat belts leads most strongly to the conclusion defendant's reliance upon Mount is misplaced. Mount could not contain any recitation of facts or allegations of error raising any issue as to whether the seat belts were in fact *used* for the answer given was that he did not have seat belts. That case did not in fact rule the issue involved in the instant appeal. Or, put another way, if it did so rule it must be considered as obiter only for that was not the issue the opinion itself gives as presented for decision. What it in fact ruled was that an inquiry whether an automobile is equipped with seat belts has bearing and is to be considered in determining if plaintiff has exercised due care.[2] Admittedly such an interpretation

---

1. Verdict was for $1,000.00. The opinion recites plaintiff alleged special damages of $2,440.65, but it does not state the evidence as to that item sustained that sum.

2. This interpretation of the opinion has been suggested, albeit not in the detail stated here. (Illinois Bar Journal, Dec. 1968, Vol. 57, No. 4, pages 320–326.)

runs headlong into the language used in Mount, for the court there stated: "[4–6] The use, or non-use of seat belts, and expert testimony,[3] if any, in relation thereto, is a circumstance which the trier of facts may consider, together with all other facts in evidence, in arriving at its conclusion as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain. However, this element should be limited to the damage issue of the case and should not be considered by the trier of facts in determining the liability issue. Whether a person has or has not availed himself of the use of seat belts would have no relevancy in determining the cause of an accident. [7] It is to be noted that we do not consider the weight to be given such evidence, but merely that it is admissible on the question of the plaintiff's due care to avoid injury." As one reads Mount the conclusion comes forcibly that the issue as to the use of seat belts was to be discussed as a result of some compulsion to do so, regardless of the issue presented for ruling, and is obiter.

Second, even if, as defendant, we were to rely solely upon the language of the opinion set out above, disregarding the fact that language is obiter, there are equally compelling reasons we cannot hold Mount states the law as to the use of seat belt issue presently in force in Illinois. A brief history is necessary to properly understand why this is so. Mount was handed down in March of 1968. In September of 1967 the writer of Mount handed down Maki v. Frelk, 85 Ill.App.2d 439, 229 N.E.2d 284, hereinafter referred to as Maki I. In Maki I the writer adopted comparative negligence for the first time in Illinois, stating: "The plaintiff's action can not be defeated by his own negligence, unless such negligence be at least equal to that of defendant; however, plaintiff's damages shall be diminished by the jury in proportion to the amount of negligence attributable to him." That case was then appealed to the Supreme Court of Illinois by both parties. In July, 1968, Maki I was overruled. See Maki v. Frelk, 40 Ill.2d 193, 239 N.E.2d 445 (Maki II). In the opinion the Illinois Supreme Court declined to adopt comparative negligence holding that such a "far-reaching" change was for the legislature rather than the court. We hold that decision rendered Mount valueless to defendant on the issue of the use of seat belts. The same judge wrote both opinions. Absent the existence of comparative negligence, established by Maki I and in effect when Mount was decided, what was said in Mount on this issue is completely meaningless. This for the reason Mount carefully limited its statements as to evidence regarding the use of seat belts to the issue of damages only. Yet without comparative negligence *any* lack of due care would bar recovery completely. Considering the language in Mount in the light of the same writer's earlier statement in Maki I that "* * * plaintiff's damages shall be diminished by the jury in proportion to the amount of negligence attributable to him", it is obvious that as to this issue Mount was in fact based upon comparative negligence; a doctrine then viable and now destroyed in Illinois.

■ It is inescapable that Mount is not authority for defendant's contention. The result is that there is no law in Illinois on the subject and we are free to apply our own.

This decision then presents one of first impression[4] in this state and we are firmly convinced that to allow such evidence is

---

3. No such evidence was offered or given at the trial. The only question asked was that of the plaintiff as to whether his car was so equipped and the only testimony given was his answer it was not.

4. Brown v. Bryan, Mo., 419 S.W.2d 62, specifically states it does not rule upon this issue. Such a decision was unnecessary in that case as the objection came after several earlier unobjected to references to the same matter, the trial court granted all relief counsel asked for, and the issue was evidently abandoned as no instruction was offered or given.

improper. In this regard we find ourselves in full accord with the reasoning and result of Romankewiz v. Black, 1969, 16 Mich.App. 119, 167 N.W.2d 606. In Michigan, as in Missouri, the statute requiring an automobile to be equipped with seat belts imposes no duty to wear such belts nor any penalty for failure to do so. See § 307.165, RSMo.1959, V.A.M.S. At the time the Romankewiz opinion was written no state had a statute imposing such a duty except Rhode Island which requires their use only in government and public service automobiles. The same is true at this date. The Minnesota, Tennessee and Virginia statutes specify that the failure to use the device shall not be deemed negligence. The court in Romankewiz also noted that statutes requiring such devices to promote safety (such as seat belts, shoulder harnesses, sideview mirrors, headrests, etc.) are uniformly silent as to any requirement they be used leading to the conclusion non-use was not intended to be punished.[5] The opinion is also valuable for its collection of the case law throughout the states of this nation. Romankewiz relies heavily upon Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65, where at l.c. 70 it was held: "If the failure to buckle a seat belt is not negligence per se, it could be contributory negligence only when a plaintiff's omission to use the belt amounted to a failure to exercise the ordinary care which a reasonably prudent person would have used *under the circumstances* preceding that particular accident. Since the facts and circumstances preceding any accident will vary, so must conduct constituting due care. Under what circumstances would a plaintiff's failure to buckle his seat belt constitute negligence? If a motorist begins his journey without buckling his belt, ordinarily he will not have

time to fasten it when the danger of accident becomes apparent; so the duty to 'buckle up'—if any—must have existed prior to the injury. Furthermore, it must be remembered that until one has, or should have, notice of another's negligence, he is not required to anticipate it. On the contrary, he is entitled to assume that others will use due care for his safety and their own. (Citing cases)."

It is apparent the doctrine of assumption of risk will not sustain a decision allowing the admission of such evidence. Before one can assume a risk he must know it exists. While travel in an automobile has reached the point where it can perhaps be said to be more dangerous than ever before, it has not reached the point where we could hold that an accident is so likely to occur that each and every time one gets into an automobile he must be held to have assumed the risk of injury. Romankewiz also disposed of the theory of avoidable consequences or mitigation of damages as allowing such evidence, stating: "This argument, it seems to us, is disposed of by a very simple bit of logic: if there is no duty to buckle a seat belt, failure to do so cannot be held a breach of duty to avoid consequences or minimize damages. * * The seat-belt situation does not fit the doctrine of avoidable consequences because the failure to fasten the seat belt occurred before the defendant's negligent act and before the plaintiff's injury. (Citing cases and articles.) Nevertheless, it is closely analogous. The same considerations, however, which reject the proposition that a motorist's failure to fasten a seat belt whenever he travels is negligence, impel the rejection of the theorem that such a failure to should reduce his damages. If

5. Note that the Missouri statute is directed to automobile manufacturers and dealers in that it forbids motor vehicles "manufactured or assembled" after June 30, 1964 to be "sold or registered" unless equipped with seat belts. Presumably seat belts could thereafter be torn out. Contrast that statute with the provisions of § 307.170, RSMo 1959, V.A.M.S., requiring every motor vehicle to be equipped with the safety devices therein enumerated, thus providing for their continued existence. It follows this statute would not of itself authorize the inquiry as to whether the Miller automobile was equipped with seat belts.

there is no duty to fasten a seat belt, such a failure cannot be held to be a breach of the duty to minimize damages. Even were there a statutory requirement that a motorist fasten his seat belt every time he ventured upon the highway—a requirement which would create the duty and provide the standard now lacking—the complicated task of damage apportionment would 'invite verdicts on prejudice and sympathy contrary to the law,' create 'unnecessary conflicts in result,' and 'degrade the law by reducing it to a game of chance.' "[6]

Accordingly, we hold that as a matter of law evidence as to the failure to use a seat belt was inadmissible to show Mrs. Miller's lack of due care. Such a matter is properly for the legislature. The trial court correctly ruled that issue.

The judgment is affirmed.

WOLFE, P. J., and DOWD, J., concur.

6. In addition to the authorities collected in Romankewiz, supra, see Remington v. Arndt, 28 Conn.Sup. 289, 259 A.2d 145, where at l. c. [2] 146 the court held that although there is no "unqualified" duty to use a seat belt, " * * * such a duty may arise when there are circumstances which require him to anticipate a collision or other mishap and there is an opportunity for him to fasten the belt." Also see Higdon v. Stringer, S.D.Ind., Oct. 20, 1969.